JESSE ROBSON, plaintiff in error, vs. ELIZABETH JONES, defendant in error.

[1.] When a man marries a wife entitled to an estate from her former husband, which he receives and promises to hold in common with that coming to her daughter, of whom he is guardian, and at the maturity of his ward, settle the same upon his wife, said contract is valid; and the fact of his holding the possession of the undivided property under such circumstances, will not be a reduction of it to possession, by him *as husband*: further the wife is entitled to the same by survivorship, at the death of her husband; and a Court of Equity will decree a settlement thereof for her benefit, even as against the creditors of the husband, and her claim constitutes a sufficient consideration to support an agreement between her and her son-in-law, as to the division of said property.

[2.] A decree for so much money will not be set aside, unless the Court is satisfied that it is excessive, and to an amount that will justify a renewal of the litigation.

[3.] A Court will hardly award a new trial in an important case, because testimony has been inadvertently admitted, which is wholly immaterial, and which it is apparent could have helped or hurt neither party.

In Equity, from Calhoun county. Tried before Judge ALLEN, at November Term, 1858.

This was a bill in equity, filed by Elizabeth Jones, against Jesse Robson.

The bill states that plaintiff first intermarried with Drury

Stokes, by whom she had one child, Georgia Ann Stokes, the wife of defendant. After the decease of Stokes, plaintiff married James Jones, who became the guardian of her infant daughter; that her first husband left a considerable estate, and by agreement before marriage with Jones he was not to use any part of Stokes's estate, but the whole was to be kept together undivided in his hands, and plaintiff's share was not to be subject to his marital rights. That after their marriage, in pursuance of this agreement, all the estate of Stokes, which came into the hands of Jones, was returned by him, as guardian of the said Georgia Ann, one-half of which plaintiff alleges belonged to her.

The bill further states, that Jones purchased from funds received of the estate of Stokes, four negroes, Ned, Dolly, Louisa and Winny, all of which he mortgaged to the security on his guardianship bond, as an indemnity, and that Jones died in the county of Washington, in the year 1841, leaving his estate greatly embarrassed; that suit was instituted in equity by the surety on the guardian bond, to enjoin creditors and to enforce the prior rights and lien of the ward upon his estate, as provided by statute.

The bill further states that Robson, the defendant, who had intermarried with said Georgia Ann, and well knew that plaintiff was entitled to one-half of said estate, proposed that if she would interpose no obstacle, but would consent that said estate might be sold in satisfaction of defendant's claim against said deceased, as guardian of his wife, that he, Robson, would buy all the negroes, and plaintiff and himself would divide them; that confiding in Robson, plaintiff agreed to this arrangement, and the property was sold under a decree of the Court of Equity, and purchased by Robson at a very inconsiderable sum, which was credited on his demand; that shortly afterwards in fulfillment of said agreement, Robson turned over to plaintiff a negro girl named Louisa, which girl has been in plaintiff's possession ever since; and that Robson promised from time to time to

carry out in full their agreement, but delayed and postponed the same, falsely representing that if said property was divided that plaintiff's share would be taken for the debts of her late husband; and the more effectually to deceive plaintiff, Robson induced her to sign a note to one Cain, which was put in suit and judgment obtained in a Justice Court, and transferred to Robson, who had all the perishable property belonging to plaintiff sold, and after buying it in, reconveyed it to her and her children.

The bill further states that Robson denies and repudiates said agreement, and claims the whole of said property, and has commenced his action of trover for the recovery of the girl Louisa, the only property which plaintiff has ever received under said agreement. That from the proceeds of the sale of one of said negroes, Robson bought two others, which with those purchased by him as aforesaid, he has had since 1845.

The prayer of the bill is, that an account be taken of the hire of said negroes, and that there be a partition of the same between plaintiff and defendant, according to said agreement.

The bill was amended, charging defendant with having received, as part of the estate of Drury Stokes, deceased, several tracts of land, which he had sold, and appropriated the proceeds to his own use, and to one-third of which plaintiff, as the widow of said Stokes was entitled.

Defendant answered the bill, and admitted that he married Georgia Ann Stokes, the daughter of plaintiff, but denies that Stokes died possessed of much property; does not know whether the estate was ever divided, but alleges that James Jones, the second husband of plaintiff, and guardian of Georgia Ann, received the effects, whatever they were, of the said estate, and believes that he made a division thereof, and retained plaintiff's share; knows nothing of any agreement between plaintiff and her husband, Jones, before or after marriage, and never heard of it until recently, and if

there was one, believes it was in parol, and disregarded and forgotten, until recently, when such pretended agreement was thought to be of service in combatting defendant's rights; and that whatever property or funds said Jones returned and charged himself with, as guardian, defendant believes rightfully belonged to his ward, the said Georgia Ann; admits that Jones in his lifetime purchased the negroes named in the bill, but believes and charges that said negroes were purchased with the money of his ward, received from the estate of Nancy Stokes, the grand-mother of said Georgia Ann; that Jones mortgaged the negroes as mentioned in the bill; that after his death, Samuel Robson became the guardian of Georgia Ann, and he filed the bill in equity, seeking to sell so much of Jones's estate as would satisfy the claim of said Georgia Ann; that pending this proceeding defendant married said Georgia Ann, and was made a party to the bill, but he denies all knowledge of any claim of plaintiff to any part of the sum, that by the decree in said case was awarded to him, or that she had any rights or interests aside from that of her late husband, the said Jones, and denies that he ever made, or entered into any such agreement or arrangement as charged in the bill; states that he purchased the negroes referred to by the bill, at the sale made under the decree, and the amount of his purchases was credited on his judgment—never recognized any such contract as that set up by plaintiff, but from kind and friendly regard, allowed the girl Louisa to go into plaintiff's possession; denies all the charges in the bill in relation to any contract, false representations, or deceitful practices; denies the charge in relation to the note given by plaintiff to Cain; but avers that upon her earnest request, he bid in the property as charged in the bill, and conveyed it as she desired and directed; knew of no claim or title set up by plaintiff to the negro Louisa, until 1850 or 1851, when he immediately commenced suit for her. He also pleads the statute of limitations, &c.

The case was submitted upon the pleadings, proofs and charges of the Court, and the jury found for plaintiff two thousand eight hundred and eighty-five dollars and forty cents.

Whereupon, defendant moved for a new trial on the following grounds, to-wit:

1st. Because the Court erred in not dismissing the bill for want of equity.

2d. Because the Court refused to dismiss the bill after the complainant closed the evidence on the ground: 1. That from the evidence of complainant, it was shown that complainant rested her recovery on the fact of combination between complainant and respondent, to defraud the creditors of James Jones, her husband, and that a Court would not interfere to compel an execution of the contract, and if executed would leave the parties where they were. 2. That from the bill and evidence, there was no consideration passing from complainant to respondent, on which the alleged contract or promise could be sustained.

3d. Because the Court erred in admitting in evidence the deed of gift by defendant to complainant and her children, of personal property; defendant objecting to it.

4th. Because the jury found contrary to the charge of the Court and the evidence.

5th. Because the Court erred in charging the jury that when a subsisting trust existed, that the statute of limitations does not commence to run until the trustee give notice of an adverse holding, and that it was proven that a subsisting trust existed, and it had not been proven that he had given notice of his adverse holding.

6th. Because the Court erred in charging the jury, that if they believed the contract as charged, was proven, they should find for complainant, one-third of the value of the property, and hire of one-third, after deducting the amount shown by James Jones's return, to have been received from the estate of Nancy Stokes.

7th. Because the Court erred in charging the jury that if James Jones received the amount of the estate of Drury Stokes, and under an arrangement with his wife, to have no division until Georgia Ann became of age, and charged himself with it, as guardian of Georgia Ann, then it was not a reduction of Mrs. Jones' portion of Drury Stokes's estate, to possession, and it would in proper proceeding in equity, have been settled on her, and that this was a sufficient consideration to sustain the promise set up in complainant's bill.

8th. That the jury found contrary to law and equity.

9th. That the jury found contrary to evidence, and the weight of evidence, and the justice of the equity of the case.

The Court, after argument refused the motion for a new trial, and defendant excepted.

WARREN & WARREN, for plaintiff in error.

VASON & DAVIS, contra.

*By the Court.*—Lumpkin J. delivering the opinion.

We see nothing illegal in the contract set up, and sought to be enforced in the bill, between Mrs. Jones and Robson.

The agreement between Mrs. Jones and her husband, that he would keep the property together, which came into his hand, from the estate of her former husband, Drury Stokes, until her daughter Georgia Ann Stokes came of age, and then settle his wife's part upon her was a valid contract, and if Mr. Jones, as *husband*, failed to reduce his wife's share of this property to possession, as we think he did during his lifetime, the right to the property secured to her, and could be protected from liability at the instance of her husband's creditors. It is objected that the property had been converted into money, and that there could be no separate estate created in money; but a settlement can be made

of money as well as of property, and so this Court decided in the case of ——— at Atlanta.

There was a good consideration for the undertaking between Mrs. Jones and Robson, to-wit: that if she would not interfere, which she was about to do, to assert her equity, that he would buy in the negroes under his decree, and divide them with her, and there is a superabundance of evidence to prove this contract, and of his distinct and oft repeated recognition of it.

It is complained that the Court erred in charging the jury, that the short bar of four years would not prevent this recovery, provided there was a subsisting trust in Robson for Mrs. Jones. The Court was right as to the law, and the proof fully warranted the charge.

As to the amount of the verdict, there is not sufficient certainty in the data upon which it is based, to enable us to test that very satisfactorily; but taking the most restricted view as to the right of Mrs. Jones in the negroes, we find her entitled, according to the best calculation we can make, to between $2,600 and $2,700, and the decree is for between $2,800 and $2,900; a difference too small when we look to the vagueness of the data, to justify this Court in saying that the finding was for too much.

What has seemed to be the smallest point in this case, has given us the most trouble, namely: the competency of that portion of the testimony which refers to the sale of the perishable property in the possession of Mrs. Jones, belonging to the estate of her deceased husband, under an arrangement fabricated between Robson and herself for that purpose; it neither helps her nor hurts Robson; it is a mere straw in the case. We dislike to subject those parties to a renewal of this family litigation, on account of this grain of mustard seed; this small dust of the balance.

Perhaps we may save our consciences by holding that it tends to show a disposition on the part of Robson to protect his mother-in-law in the enjoyment of the whole of the

property left by her former husband; and thus a gleam or glimmer of light corroborative of the agreement which he made for that purpose; this is not the avowed object for which it was offered; that we never could comprehend. We can say no more for it, and this is very little.

Judgment affirmed.

McDonald J. absent.