## PARKER v. BARNESVILLE SAVINGS BANK *et al.*

1. While as to lands purchased by a husband with funds belonging to his wife, to which he took titles in his own name, a resulting trust immediately arises in favor of the wife, she can not assert ownership thereof as

against a third person who, in ignorance and without notice of her secret equity and on the faith of the husband's apparent title, makes to him in good faith a loan secured by a mortgage covering the lands so held in trust. Under such circumstances, the mortgagee, to the extent of his interest in the lands mortgaged, stands upon the same footing as a bona fide purchaser without notice of the trust.

2. If, however, such mortgage debt be infected with usury, and the mortgagor is insolvent, it is the equitable right of the wife, as a creditor of her husband, to compel the mortgagee to purge his claim of the usury charged against their common debtor. To this end the wife may, even after a foreclosure of the mortgage, avail herself of the statutory remedy provided for by section 2769 of the Civil Code, whereby a creditor is permitted, upon specified terms, "to contest the validity or fairness of a mortgage lien or debt" prejudicially affecting his interests as such.

3. Under the facts alleged, the plaintiff was not entitled to assert her equitable "ownership" of the mortgaged premises.

Submitted March 27, — Decided July 27, 1899.

Equitable petition. Before Judge Beck. Monroe superior court. February term, 1898.

*J. S. Boynton* and *R. L. Berner*, for plaintiff.

*S. N. Woodward*, for defendants.

LITTLE, J. Mrs. Nancy Parker filed an equitable petition setting up substantially the following facts: By the fifth item of his will Eleazer Adams devised to his daughter Nancy certain lands. The devise is in the following language: "I give, bequeath, and devise unto my beloved daughter Nancy, for her sole and separate use for and during her natural life, free and exempt from the debts and liabilities of any future husband she may marry or have," the lands described, etc. The testator also bequeathed to his daughter certain negro slaves and other personal property, subject to the same limitations which attached to the land. The will took effect in 1854, and therefore the estate which the daughter took, and the nature of it, must be determined by the laws then in force. After the execution of the will and before the death of her father, Nancy intermarried with W. H. Parker. On the death of her father Parker took possession of the lands devised in the will, as well as the negro slaves and other property, and by the use of said property accumulated a considerable fund which from time to time was invested by Parker in certain other lands, the title to which he took in his own name. She

never in any way assented to this investment of the funds. Parker continued in the use and enjoyment of the land so purchased, and is now in possession of the same. In 1882, at various times, Parker borrowed different large sums of money for which he gave his promissory notes. He paid some of the money so borrowed, and gave renewal notes for the balance. These dealings were had with the Barnesville Savings Bank, and extended through a series of years. Finally the dealings culminated in the execution to the bank by Parker of four promissory notes each for the sum of $1,193.20, and another note for $1,629.30, to become due at different dates. These notes Parker secured by a mortgage on a large tract of land, including the lands in which the fund belonging to Mrs. Parker received under her father's will was invested. Subsequently the bank obtained rules absolute on the mortgages so given, executions issuing from which were levied on the lands described in said mortgages. In the equitable petition filed by Mrs. Parker it is alleged that the rules absolute were inadvertently granted by the court, because it was understood that the cause then pending between the bank and Parker was to be continued on account of the sickness of Parker, and that Parker's defense was partial payment of the mortgage, and usury. Before the levy of the mortgage fi. fas. so issued, Parker had made a deed conveying the title of the lands described in the mortgage, to secure a loan of a large sum of money, and received from the grantee a bond for titles which Parker subsequently assigned to Willingham and Huguley for the protection of the creditors whom they represented. It is alleged by Mrs. Parker that the rules absolute which were granted are for sums which Parker does not owe; that he was entitled to certain credits on the notes secured by mortgage, which were not given; that in addition, the notes and mortgages are made up of usury, as the principal of said notes bore interest at rates varying from one to two per cent. per month, and that on a fair accounting and purging of usury it would be found that Parker would be entitled to a judgment against the bank for a large sum; and that for these reasons the mortgages constituted no lien on the lands purchased by

Parker with her funds and which really belong to her. She alleges that the mortgage fi. fas. are a shadow on her title; that she is ready to pay all that is legally due on the mortgages. The prayer of the petitioner is, that the bank may be enjoined from further proceeding with their mortgage fi. fas.; that Willingham as attorney be enjoined from enforcing the lien of his client; that an accounting and settling be had between Parker and the bank, in order to determine what amounts have been paid on the mortgages and how much usury the notes contain; that the title to the lands which she claims be decreed to be in her, and that the bond for titles assigned by Parker be turned over to her as the owner of the property; that the judgments rendered on the foreclosure of the mortgages be set aside as having been granted inadvertently and by mistake. She also prays for general relief. B. S. Willingham, W. H. Parker of Monroe county, Huguley and the Barnesville Savings Bank of Pike county are made parties defendant. It is claimed by the petitioner that title to the land in question belonged to her; that it was purchased by Parker under the act of 1866, and he should have taken title in the name of petitioner; that the debt to the bank is made up entirely of usury. The bank demurred to the petition, generally and specially. The court sustained the demurrer and dismissed the petition, to which ruling plaintiff in error excepted.

Inasmuch as the demurrer which raised the questions presented in this case was not joined in by certain of the defendants, and the judgment of the court below will be construed so as to dismiss the petition only as to the Barnesville Savings Bank, only the questions raised by the demurrer will be passed on. From the view which we take of the law which governs the case, we find it necessary to consider only one of the grounds of the demurrer, that is, that the petition contains no grounds for relief. It may be well to consider for a moment the question as to whether the rules absolute granted to the bank on its mortgages against Parker were inadvertently or by mistake allowed by the court. If they were, it would have been the duty of Parker to have moved to set them aside in the court

which granted them, and have given to the judge presiding an opportunity to pass on the question whether they were or were not so granted.   To his decision, on a motion so made, a writ of error could have been sued out to this court and the legal rights of Parker settled as to the question whether the judgments were properly or improperly granted; and in the absence of such a proceeding, this court will hesitate to make any ruling which declares the judgments not to have been properly rendered.   When, however, we refer to the allegations of the petition charging inadvertence and mistake on the part of the court in granting the judgments, we find no just cause for setting them aside.   The petition alleges that at the term at which they were rendered Parker was sick in bed and unable to swear to his plea, and it was understood by the attorney of Parker that the cause would be continued for the purpose of allowing Parker to swear to and file a plea, and that contrary to this express understanding the rules absolute were granted by the court.   It is further alleged in this connection, that the granting of the rules absolute was illegal, contrary to the announcement of the court, and should be set aside.   These allegations are wholly insufficient as a predicate for setting aside the judgments.   It is not alleged with whom the attorney for the defendant had any understanding that the case would be continued, nor is it intimated that the judge presiding assented to such understanding, further than the recital that they were granted contrary to the announcement of the court.   What such announcement was we have no means of knowing, and these meager allegations do not authorize the setting aside of the judgments on the ground that they were improvidently granted. Assuming, as we do, all the allegations in the petition to be true, the first question which arises is, did the marital rights of the husband, as defined by the statutes of this State in force at the time that the will took effect, attach to the property devised and bequeathed to Mrs. Parker by her father?   In the case of *Hudgins* v. *Chupp*, 103 *Ga.* 484, this court held that under the statutes of this State in force prior to the passage of the act of 1866, known as the "married woman's act," the rights of the husband in the real estate of the wife were, as

compared with his rights at common law, very much enlarged. By the language of such statutes the title to the real estate became vested in and passed to the husband "in the same manner as personal property doth"; and it was there held that all the real estate of the wife in her possession and to which she had title at the time of the marriage vested in and belonged to the husband.

It is not at all necessary, however, for the purposes of this case, for us to enter into a discussion of the character of the estate which the husband took in the lands and property of the wife prior to the act of 1866. A discussion of this subject was had in the case cited supra. By reference to the will of Adams, the father of Mrs. Parker, it will be noted that the property was devised to her "for her sole and separate use for and during her natural life, free and exempt from the debts and liabilities of any husband she may marry or have." By the common law, under such a devise the husband took no estate in the property of his wife. The rule which governed such devises is found in 2 Washburn on Real Property, 5th ed. 561, and is embodied in this language: "Where an estate is conveyed to a married woman, expressly to her sole and separate use, a court of equity will hold her husband as her trustee, and not allow him to claim the rents and profits thereof as his own; and if he become bankrupt, these will not pass to his assignees." That this was the legal effect of such a devise was ruled by this court in the case of *Fears* v. *Brooks*, 12 *Ga.* 195. There, delivering the opinion of the court, Nisbet, J., said : "A separate estate may be made in a *feme sole*, as well as in a married woman, which, upon marriage, will be good against the marital right; and this, although no particular marriage be in contemplation. Upon marriage, the trust will immediately attach upon the property, so as to exclude the husband's title, although no further settlement be executed. The interposition of a trustee, to protect the separate estate, was at first deemed essential, because the interest of a married woman is the subject only of equitable cognizance. It is, however, now settled that a separate estate may exist, without the intervention of trustees. In that case, the husband will take the

legal interest, but equity will treat him as a trustee for his wife." Therefore, it must be conceded that the will of Adams vested in his daughter title to the property devised, and when the husband first took the same into his possession he held the same for her in the nature of a trust; and when he invested the proceeds arising from the use of that, in other property, and took title in his own name, nevertheless the wife had an equitable title to the property so purchased. In 1 Perry on Trusts, § 128, it is said that such a transaction "is looked upon as a purchase paid for by the cestui que trust, as the beneficial interest in the money paid belonged to him." Further, the same author in dealing with this subject says: "It has been said in some cases that the cestui que trust has no interest in the property purchased with the trust fund in the name of the trustee, but only a lien on the property in the nature of a vendor's lien for the purchase-money, with a right to a decree for a sale to reimburse the trust fund. This is certainly one of the rights of the cestui que trust, if he elects to proceed in that manner, and he may hold the trustee responsible, if there is a loss on such sale. On the other hand the trustee can make no profit to himself by dealing with the trust fund; and, if he makes a purchase with it, the cestui que trust can elect to treat the property as a part of the trust property, and he is entitled to all the advantages of the speculation or investment thus made with the property in the name of the trustee."

It must, therefore, appear, under the allegations in the petition, that Mrs. Parker had either the right to treat her husband as a debtor to the value of the trust fund in his hands, or to assert her equitable claim of ownership in the property purchased with her funds. In this case she has elected to do the latter. After the passage of the act of 1866, she had the legal title, and could have compelled her husband to convey the lands, so purchased, to her. If he had any claim against her for services, it would have to be adjudicated and would have been simply a charge against the trust estate. In no event would he in any sense become part owner of the land or be in a position, as against her, to deny a resulting trust as to all lands purchased with her money. But the same rule can not

be extended to a bona fide purchaser from the husband, who had no notice of the equity of Mrs. Parker. Section 3934 of the Civil Code declares that "A bona fide purchaser for value, and without notice of an equity, will not be interfered with by a court of equity." This doctrine proceeds upon the idea that the equity of the innocent purchaser is superior to that of the cestui que trust, who stands silently by and permits such purchaser to act to his prejudice, or who is guilty of laches in not sooner asserting a mere secret equity. It follows that as soon as a purchaser from the husband acquires his legal rights, the cestui que trust loses all claim to the property so purchased; and such purchaser can not be compelled to litigate with, or in any way recognise, the cestui que trust as having any rights or interests in the premises. Indeed, the only footing the latter has, after a sale, is the limited privilege of showing that the purchaser was not acting bona fide, but had notice of and therefore bought subject to the secret equity. A petition for relief on any other ground is not maintainable; for, after a bona fide sale, the holder of the secret equity is effectually cut off from asserting any claim whatsoever. It matters not if he offers to do equity by returning the purchase-price with interest and otherwise making the purchaser whole. The purchaser is entitled to his bargain, if made in good faith, and can not be disturbed in his possession, no matter what equitable arrangement the holder of the secret equity proposes as affording protection to all the parties concerned. In a word, a bona fide purchaser without notice acquires an unqualified legal right and title to the property purchased, and a court of equity has no jurisdiction to interfere with such vested legal right and title. A mortgagee who in good faith parts with his money, in ignorance that a person other than the holder of the legal title has a secret equity in the mortgaged property, stands precisely in the attitude of a bona fide purchaser and is entitled to the same protection. See *Thrasher* v. *Partee*, 37 *Ga.* 392; *Lane* v. *Partee*, 41 *Ga.* 202; *Sumner* v. *Bryan*, 54 *Ga.* 614; *Lewis* v. *Mortgage Co.*, 94 *Ga.* 573. Indeed it has been held that even an unsecured creditor, who parts with his money on the faith of his debtor's being the holder of the legal title, and without notice

of a secret equity, can not, after judgment, be cut off from subjecting the property to the payment of his debt by a person setting up such secret equity.    *Zimmer* v. *Dansby*, 56 *Ga.* 79. Though until after judgment the latter can assert such equity as against an unsecured creditor.    *Dodd* v. *Bond*, 88 *Ga.* 355.

In the present case, when the bank, without notice, acquired its mortgages (and no notice to it is charged in the petition), the wife was completely cut off from asserting, as against it, her secret equitable claim of ownership.    As owner, she has no footing in court, unless she can show that the bank had notice of and took subject to her equity.    This she does not even propose to do.    The bank then acquired a legal lien on the property, even though the mortgage may be infected with usury.    If the holder of the legal title who mortgaged the land to the bank could entirely defeat or reduce the claim of the bank, this would enure incidentally to the benefit of the holder of the secret equity.    She can not herself, however, litigate with the bank on the idea that in equity it is bound to recognize her equitable claim of ownership.    Her right to assert an equitable interest in the land ceased when the bank was induced to part with its money on the faith of the husband's ownership, and it has the right to treat him, and him alone, as the only person at interest, so far as title is involved. Attention may here be called, as has been before suggested, to the fact that the wife had her election, as against her trustee, to either ratify or repudiate his unauthorized investment of her funds.    By ratifying his acts, she could set up ownership of the lands purchased with her money.    By repudiating his acts, she could call him to account for a misappropriation of trust funds and trace the same into the lands in question, as against all persons affected with notice.    As regards the bank, which acquired rights in the land without notice, she can not pursue the former course and claim the land as hers.    Nor can she subject the land to the payment of the debt her husband owes her, if she elects not to ratify his investment of her money, because the bank is an innocent mortgagee entitled to be first paid.    There is, therefore, no equity in her petition as filed; for there is a plain statutory remedy open to her, by

which she can, as any other creditor of her husband could, call upon the bank for an accounting as to usury, on the ground that her debtor is insolvent and she can not otherwise realize on her claim. In the case of *Stone* v. *Georgia Loan & Trust Co.*, ante, 524, the authorities as to this right are cited and commented upon. The foreclosure of the bank's mortgage does not stand in her way ; for under section 2769 of the Civil Code she can, in the capacity of creditor, even after judgment, "contest the validity or fairness of the mortgage lien or debt," by making "affidavit of the grounds upon which [she] relies to defeat such mortgage, and giving bond and security as provided." The provisions of this section are by section 2750 of the Civil Code expressly made applicable to mortgages on real property. Of course, she would have to base her right to purge the mortgage debt of usury on the ground that her debtor is insolvent.

For these reasons, the demurrer to the petition was properly sustained ; and the judgment of the court below is

*Affirmed. All the Justices concurring, except Simmons, C. J., who was disqualified.*