### MANNING *et al. v.* MANNING *et al.,* and *vice versa.*

1. Where a mother buys a tract of land with money belonging to her minor children, and takes the legal title in her own name, equity will imply a trust against her and her vendee with notice of the children's equitable title.

2. Where the children after attaining majority agree with their mother that she shall occupy the land during her life, receiving the rents, issues, and profits therefrom, if afterwards one of the children fraudulently procures a deed from the mother, conveying to him the entire premises, he can not, in the absence of any intervening equity or estoppel, urge the inaction of the other children, during their mother's lifetime, as such laches as will bar their action, instituted four years after the death of the mother, against him to declare a trust in the land and cancel his alleged fraudulent deed.

3. The possession or occupancy of land which will be notice of the occupant's title must have some element in it indicative that the occupancy

is exclusive in its nature. Where, therefore. a daughter lives in the house with her mother, upon land the title of which is in the mother, and where the mother receives the rents, issues, and profits of the land, a bona fide purchaser from the mother while in possession of the land takes his title freed from any secret equity of the daughter.

4. After one in possession of land, clothed with the legal title, conveys the land to a bona fide purchaser, his subsequent declarations impugning the integrity of his conveyance are inadmissible in evidence to invalidate his deed.

JANUARY 11, 1911.

Equitable petition. Before H. L. Patterson, judge pro hac vice. Milton superior court. August 16, 1909.

Cora A. Manning and Mary I. Crisler filed their petition against William N. Manning, J. P. Brooke, and W. B. Maxwell, administrator with the will annexed of Mary Manning, wherein it was alleged, that Reuben S. Manning died in the year 1848, leaving a widow, Mary Manning, and seven children, the youngest three of whom are the petitioners and William N. Manning; that A. T. Camp qualified as guardian of petitioners and William N. Manning, and as such guardian received from the estate of their deceased father the sum of $810, which he in the year 1852 invested in two 'lots of land, which are described in the petition, taking the legal title thereto in the name of Mary Manning. The investment was made with the knowledge of Mary Manning that the money of the three named children had purchased the land, and she went into possession thereof as trustee for these children. Mary Manning and her three children jointly occupied the premises for many years, and one of the plaintiffs, Cora A. Manning, is now in possession of the house with one and a half acres of land attached. In the year 1893 William N. Manning, with full knowledge that he and each of plaintiffs were entitled to a one-third undivided interest in the land, fraudulently induced his mother to make him a deed. He procured the deed by representing to his mother that the instrument was a will, revocable at her pleasure; and his mother, being above seventy years of age, feeble in mind and body, and wholly illiterate, relying upon the statement of her son that the paper was a will and not a deed, and that it was necessary for her to sign such paper in order to secure a support during the remainder of her life, and ignorant that the interest of petitioners was being jeopardized in consequence of her contemplated act, and upon a full understanding that the disposition of the land would remain permanently under her control,

signed the instrument presented by her son, without receiving any consideration therefor. When the three children came of age their guardian informed their mother that he would have to sell the land to pay the children their distributive shares which had been invested in the land; whereupon petitioners and William N. Manning then and there requested their guardian not to sell the land, but to allow their mother to live on the land during her life, stating that at her death they could divide it amongst themselves. The three children assented to this arrangement, and the land remained in the possession of the widow until her death in June, 1901. About the year 1897 William N. Manning notified his mother that he claimed the entire land under the deed from her; and thereupon she made a will repudiating the deed, and setting forth in the will the circumstances under which it was procured. Mary Manning never surrendered the land to William N. Manning, but continued to occupy the same until her death, and Cora A. Manning is now in possession of the dwelling and about one and a half acres of land attached. In the year 1904 William N. Manning conveyed to J. P. Brooke a part of the land, with notice of the rights of petitioners, and with knowledge that Mary Manning had no power to convey to William N. Manning the entire premises. Mary Manning claimed possession of said land only as tenant of petitioners and William N. Manning, under the terms of the agreement that she was to remain in possession during her life. Before her death Mary Manning sold off two parcels of the land, one consisting of ten acres and the other twenty acres. The prayers were: that the right and title of petitioners to a joint interest in the premises be set up and established by appropriate decree; that the deed from Mary Manning to William N. Manning be set aside and canceled; that the petitioners be declared tenants in common with defendants J. P. Brooke and William N. Manning; that William N. Manning be required to account for the rents, issues, and profits received by him in excess of the amount that he would be entitled to hold as tenant in common; and that a partition of the premises be decreed, and the interest of petitioners and each of the defendants be apportioned to them in severalty.

The defendants Manning and Brooke demurred generally and specially. The special demurrers were met by appropriate amendments, and the court overruled the general demurrer. These defendants also answered, denying all the essential averments of the

petition. At the conclusion of the plaintiffs' evidence the court awarded a nonsuit. Exceptions were taken to this judgment, and to certain rulings relating to the exclusion of evidence. Manning and Brooke sued out a cross-bill of exceptions, complaining of the over-. ruling of their demurrer.

*J. A. Dodgen, J. H. Dodgen,* and *Daley, Chambers & Smith,* for plaintiffs. *George F. Gober* and *J. P. Brooke,* for defendants.

EVANS, P. J. (After stating the foregoing facts).

1. The prayers of the petition are, to declare a resulting trust against the holder of the legal title, for partition, and for accounting and other relief. A trust is implied whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another. Civil Code, § 3159. The allegations are that the land was purchased with money belonging to the two plaintiffs and the defendant William N. Manning, during their minority, but that the deed was made to their mother. If the title was acquired by the mother under these circumstances, she held the land in trust for the beneficiaries whose money was used in paying for it, and the cestuis que trustent may maintain an equitable petition for the purpose of declaring the trust.

. The subsequent conveyance by the mother to the defendant William N. Manning, if taken with notice of the plaintiffs' equity, would not deprive the plaintiffs of their remedy. A purchaser from one whose title is subject to the equity of another, and who has notice of such equity, takes the land burdened with the equity. In the hands of any but an innocent purchaser of the property, the fiduciary character clings to it. 27 Am. & Eng. Enc. Law 251; *Maddox* v. *Oxford,* 70 *Ga.* 179.

2. The plaintiffs are not barred of their remedy from lapse of time. It is alleged, that, soon after the youngest three children of Reuben Manning (the plaintiffs and the defendant William N. Manning) had attained their majority, it was agreed amongst them that their mother should have the exclusive occupancy of the land during her life. The defendant William N. Manning, if he made such agreement, is not in a position to urge in a court of conscience that his sisters, by respecting and observing their contract with him and his mother, are guilty of laches in not bringing the present action during the lifetime of the mother. There is no statute of limi-

tations regarding the time in which actions for land must be brought; and as this suit was instituted four years after the death of the mother, and no ·independent equities or estoppels have intervened, the plaintiffs are not in such laches as debars their right of action. The demurrer was therefore properly overruled.

3. But the plaintiffs failed to prove all the essential allegations of their petition. They offered testimony of declarations of their mother as to the payment of the purchase-money. One witness testified that the mother declared that the money ·used in the payment of the land was the distributive shares of the youngest three children and that the land belonged to them. Another witness testified that the mother had stated that the land was purchased with the money obtained from the guardian of all the children of Reuben Manning, all of whom except the youngest three were settled with as they respectively reached their majority. The plaintiff Mrs. Crisler had not lived on the land since 1870, and the plaintiff Cora Manning lived in the same house with her mother until the latter's death, and since then had remained in the house and retained possession of the curtilage, which contained about one acre and a half. The defendant William Manning, since the deed to him from his mother, had been in actual possession of all the land except the house and curtilage. No proof was offered to show that he ever contended or admitted that· any part of his or the plaintiffs' inheritance went into the purchase of the land,· or that he had any actual notice of such investment. Nor was there any proof that he perpetrated any fraud on his mother in the purchase of the land. If Mrs. Manning had sold the land to a stranger without notice of the plaintiffs' equity, his title would have been taken free from such equity.

The defendant William Manning, so far as the proof developed, stands in the same relation to the plaintiffs' attempt at assertion of their equity in the land as if he were a stranger. His deed recited a valuable consideration, and no testimony was adduced to impeach this recital. He was not shown to have actual notice of the plaintiffs' equity, nor are there any facts disclosed from which notice may be implied. The circumstance that one of the plaintiffs lived in the house with her mother at the time of the defendant's purchase is insufficient to raise an implication of notice. It is true that "possession of land is notice of whatever right or title the oc-

cupant has" (Civil Code, § 3931) ; but a possession, effectual to impute notice, must have some element in it indicative that the occupancy is exclusive in its nature. This plaintiff is the daughter of the defendant's grantor, and the evidence affords no inference other than that she lived with her mother, either as dependent on her generosity, or in the discharge of the filial duty of companionship and domestic aid. In either case she was a member of the family of her mother, who held the legal title, and who was in actual possession of the land, exercising ownership over it. Under these circumstances, the plaintiff had no possession, and a bona fide purchaser from her mother is protected from her secret equity. *Austin* v. *Southern Home Asso., 122 Ga.* 439 (50 S. E. 382). The nonsuit was the logical result of the case.

4. Several assignments of error relate to the exclusion of evidence, but the evidence excluded by the court, either literally or in substance, is not made to appear, and therefore no question is presented for adjudication. The court also excluded certain transcripts from the minutes of the court of ordinary, relating to the administration of the estate of Reuben Manning, such as the bond, and the sale of personal property, and an agreement appearing upon the minutes that Mary Manning would rear the children without charge to the estate. These matters were irrelevant to any issue made in the case. The plaintiffs also offered the will of Mary Manning, disposing of the property, wherein it was recited that some of the purchase-money was paid by her, and some came from the distributive shares of the plaintiffs and William N. Manning, and reciting that her deed to William N. Manning was procured under the circumstances alleged in the petition, and devising one half of the lands to one of the plaintiffs and one fourth each to the other plaintiff and the defendant William N. Manning. The recitals in the will as to the circumstances under which William N. Manning procured the deed were mere hearsay, and could not bind him. After one in possession of land with the legal title conveys it to another he can not impugn the integrity of the title by derogatory statements subsequently made.

*Judgment affirmed on both bills of exceptions. All the Justices concur, except Fish, C. J., absent.*