## ENDSLEY *et al. v.* TAYLOR *et al.*

1. Prior to the enactment of the married woman's act, approved December 13, 1866 (Acts 1866, p. 146), all property given to a wife during coverture vested in her husband, unless there were words in the gift indicating a wish for the personal enjoyment thereof by the wife; in that event, the property given would become her separate estate.
2. Where, before the passage of the act just referred to, a married woman received a gift of money from her father under circumstances that would render it her separate estate, and the money was delivered to her husband to buy a home for her, and he bought the home and, without notice to her or by her consent, took the title in his own name, the legal title so held by him would be impressed with an implied trust in favor of the wife.
(*a*) A purchaser from the husband with notice of the trust would take subject thereto.
3. Where real estate was purchased as indicated in the preceding note, and, without notice of the status of the legal title, the wife went with her husband upon the property at the time of the purchase and continuously resided there with him until her death in 1907, and after the death of the wife the husband, being in possession, conveyed the entire property to one of their sons, who had notice of the trust, an action against the husband and the son to whom he had conveyed, instituted by the daughters and remaining sons in 1911, to declare the trust and recover their respective interests in the property, as heirs at law of their mother, would not be barred on account of lapse of time.
4. The body of land in controversy consisted of three tracts acquired at different times, the legal title to each being taken in the name of the husband. There was evidence to show that the tract first acquired was paid for with money which formed the separate estate of the wife. It was erroneous to grant a nonsuit relatively to this tract.
(*a*) There was evidence tending to show that the other two tracts were paid for, in part at least, with money produced by the farming enterprise conducted by the husband and his family on the several tracts as they were acquired. As the case will go back for another trial, when the evidence may not be the same, no ruling is made as to the sufficiency of the evidence to authorize a recovery by the plaintiffs relatively to the two tracts last acquired.

JUNE 30, 1915.

Equitable petition. Before Judge Edwards. Douglas superior court. March 27, 1914.

Polly Ann Endsley and others, who were daughters and sons of A. Q. Taylor and his wife, N. J. Taylor, instituted an action jointly and severally against their brother D. S. Taylor, and their father A. Q. Taylor, to recover a certain body of land composed of three smaller tracts, and to cancel, as a cloud upon their title, a deed from A. Q. Taylor to D. S. Taylor, purporting to convey the land.

It was alleged that A. Q. Taylor purchased one of the tracts from John Shearer in 1866, another from Nathan Walden in 1873, and another from John Morris in 1884, and received deeds to each of the lots in his own name. The deed from Shearer was dated October 17, 1866. A. Q. Taylor moved on the Shearer place with his wife and family immediately after the purchase, and continued to reside there until after the children had grown up and moved away. Taylor and his wife continued to reside there until 1907, when the wife died. After her death A. Q. Taylor, continuing to reside on the property, married a second time. In 1910 he sold the entire tract to his codefendant, D. S. Taylor. It was alleged, that the property was purchased by A. Q. Taylor with money of his wife, taking the deed in his own name, thereby raising an implied trust; that D. S. Taylor purchased with notice of the trust; that there was no administration upon the estate of Mrs. Taylor; and that the plaintiffs conceded to each of the defendants separate interests in the property as heirs at law of the deceased. The defendants answered, admitting some of the allegations and denying, among others, those relating to implied trusts. On the trial there was evidence tending to show the following as to the manner in which A. Q. Taylor acquired the property. He lived in Alabama and made a crop there in 1866. He left in August, with his wife and children, to come to Georgia. Heath, his father in law, told him to look up a home. He did so, and made a trade for the Shearer tract. Heath sold out in Alabama, and gave a thousand dollars to his daughter, N. J. Taylor, the wife of A. Q. Taylor and the mother of the plaintiffs. He paid the money to her in the presence of A. Q. Taylor. Concerning this, one of the plaintiffs testified: "As to what occurred between my grandfather and mother and father at that time, he told them he wanted her to buy her a place with the money for her—wanted her to buy a place with the money—wanted him to, and my mother consented to that; that is what he wanted done with it." The Shearer place was paid for by A. Q. Taylor entirely out of the thousand dollars, but not all of it was so consumed. The balance was used by A. Q. Taylor in buying live stock and farm supplies, and in supporting the family. The family lived on the property from the time of the purchase, and conducted the farm. Subsequently the other two tracts were acquired by A. Q. Taylor and paid for out of profits which he had

made from farming on the property.   There was evidence tending to show that D. S. Taylor, before purchasing from A. Q. Taylor, had notice of the circumstances recited above, relative to the manner in which the property was acquired and paid for.   It was admitted that there was no administration on the estate of Mrs. N. J. Taylor.   At the conclusion of the evidence the judge, upon motion, granted a nonsuit, and plaintiffs excepted.

*J. S. James,* for plaintiffs.

*W. T. Roberts* and *J. R. Hutcheson,* for defendants.

ATKINSON, J.   Prior to the enactment of the married woman's act, approved December 13, 1866 (Acts 1866, p. 146), the code provided, among other things, as follows: "All property given to the wife during coverture, or acquired by her, shall vest in the husband, but any words in the gift or bequest indicating a wish for the personal enjoyment thereof by the wife, such as a gift to the wife by name, shall create a separate estate therein for her." Code of 1863, § 1702.   This provision of the code had the effect of a statute, as the code was regularly adopted by the legislature.   The testimony of the witness quoted in the statement of facts, for convenience, may be again stated, as follows: "As to what occurred between my grandfather and mother and father at that time, he told them he wanted her to buy her a place with the money for her—wanted her to buy a place with the money—wanted him to, and my mother consented to that; that is what he wanted done with it."   This indicated that the money with which the purchase-price of the Shearer place was paid was a gift from Mrs. Taylor's father, intended for her, and was made in such way as to make it her separate estate.   Under such circumstances the marital rights of the husband would not attach to it.   In this connection see *Perkins* v. *Keith,* 33 *Ga.* 525; *Robson* v. *Jones,* 27 *Ga.* 266.   As the money was the separate property of Mrs. Taylor, to which her husband's marital rights would not attach, he had no lawful right to appropriate it to his own use.   If he purchased property with it and took title in his own name, his relation to the property would be the same as if the money had belonged to a stranger.   So treating it, he would hold the legal title impressed with an implied trust for the benefit of his wife, whose money paid for the land.   *Williams* v. *Smith,* 128 *Ga.* 306 (57 S. E. 801); *Manning* v. *Manning,* 135 *Ga.* 597 (69 S. E. 1126); Civil Code, § 3739.   Such an implied

trust could be enforced against the trustee, and also against a purchaser from him with notice of the trust. *Williams* v. *Smith,* supra. There was sufficient evidence to authorize a finding that D. S. Taylor had notice of the trust at the time of his purchase. Nor do the circumstances detailed by the evidence show that the plaintiffs are barred on account of delay in instituting the suit. It does not appear that their mother assented to the deed having been taken in the name of her husband, or that she knew of the fact. She lived on the property as a member of the family until her death in 1907. After her death the suit was brought in 1911, and no rights of innocent third persons had attached. From what has been said, it follows that it was erroneous to grant a nonsuit relatively to the Shearer place. In regard to the other two places, there was evidence tending to show that the property was bought in part with profits derived from the farm conducted by A. Q. Taylor and his family on the several tracts including the Shearer tract. As the judgment will be reversed, and on another trial the evidence may not be the same, no ruling is made as to whether the evidence was sufficient to show an implied trust relatively to the other two tracts. *Judgment reversed. All the Justices concur.*