## 29674. YANCEY v. HARRIS et al.

HALL, Justice.

This appeal presents a contest between, on one side, a homeowner who allowed record title to her residential property to stand in the name of her son-in-law because

his income or credit rating was thought necessary to satisfy the mortgage lender at the time of purchase, and, on the other side, an attorney who loaned money to the son-in-law on the strength of his record title taking a security deed to the property, and the assignee of the attorney to whom he sold the son-in-law's note and security deed, all of which was done without homeowner's knowledge. The son-in-law defaulted on payments, and the assignee threatened foreclosure. The homeowner then brought suit asking that the court decree that the property held by the son-in-law was impressed with a resulting trust in her favor, and that the security deed was null and void.

At trial the homeowner presented evidence which was more than adequate to show that she was the true beneficial owner of the property; that at all times pertinent hereto she had been in open and exclusive possession of it under a claim of title; that the son-in-law did not live on the property with her; that the attorney, prior to making the loan to the son-in-law, visited the property and ascertained that she was the mother-in-law of Mr. Harris, her son-in-law, but that he said nothing to suggest to her that the son-in-law was encumbering the property; that he never asked her under what claim she held the property; and that the assignee similarly never inquired of her. It appeared that the son-in-law had represented to the attorney that the homeowner rented the property from him. The evidence showed without conflict that the homeowner was unaware of her son-in-law's attempt to encumber the land until after the security deed was given to Siegel and transferred to Zimmerman. At the close of her case, the court directed that a verdict be entered as prayed for against the son-in-law; and that a verdict be entered for the attorney Siegel and the assignee Zimmerman (hereinafter, "the defendants") to the effect that the security deed was a valid encumbrance on the property. The only appeal is by the homeowner from the directed verdict for defendants. We agree with her contentions and reverse.

Homeowner's argument here, based on Code § 85-408, is that although record title stands in another's name her open, exclusive possession of the property is

notice to all the world of whatever her right or title may be, and that Siegel and Zimmerman had a duty to inquire of her concerning her right, and as a consequence of their failure to do so they may not now prevail. This argument is based upon very old principles of law set forth in, for example, *Broadwell v. Maxwell,* 30 Ga. App. 738, 747 (119 SE 344), in which property was impressed with a *parol trust:* "The plaintiff Maxwell, who claims to have purchased the property from Smith [trustee], and who is seeking to dispossess the tenant [beneficiary], is not a bona fide purchaser for value without notice of whatever equitable title the defendant [tenant-beneficiary] had in the property. 'Possession of land is notice of whatever right or title the occupant has.' Civil Code (1910), § 4528. 'He who takes with notice of an equity takes subject to that equity.' Civil Code (1910), § 4529. 'Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of the parties.' Civil Code (1910), § 4530. A purchaser therefore is put on notice of all the right, title, and interest of a tenant in possession. *The rule is not different where the tenant in possession is a cestui que trust. Actual possession by the cestui que trust is constructive notice to a purchaser as to the occupant's equitable title.* [Cits.]" (Emphasis supplied.)

The superior court ruled that the son-in-law held the land as trustee under a resulting trust for her benefit. This ruling has not been appealed. The law is clear that where a trustee attempts to transfer the trust realty to a purchaser in violation of the rights of a beneficiary in possession, the purchaser takes with notice of the equitable title, and the purchaser will not succeed in an attempt to eject the beneficiary. *Bank of Arlington v. Sasser,* 182 Ga. 474 (185 SE 826). Cf. *Chapman v. Faughnan,* 183 Ga. 114, 115 (187 SE 634) (beneficiary in possession may enjoin trespass by purchasers from her trustee).

This result is compatible with generally applied legal principles. "In all but a few jurisdictions, a purchaser of land has constructive notice of all facts af-

fecting the title of which he would have learned by an inspection of the premises. It is, therefore, the general rule that, if land is in possession of any one other than the vendor, a purchaser takes title subject to all existing rights and equities of the person in possession." 2 Patton on Titles 603, § 674 (2d Ed. 1957).

It is true that Mrs. Yancey, by allowing title to the property to stand in another's name, contributed to a confusing situation. However, this does not undercut her right to prevail in this lawsuit. We note with reference to concepts of estoppel that estoppel must be specially pleaded (Code Ann. § 81A-108 (c)), and none of the three defendants here pleaded estoppel in his answer to Mrs. Yancey's complaint. Nonetheless, assuming estoppel had been an issue, we find that the classical elements giving rise to an estoppel, including either intentional deception or gross negligence, are not present here in Mrs. Yancey's actions: "In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury." Code § 38-116. Moreover, Siegel and Zimmerman, who exercised no diligence in their own behalf to discover her interest, have not positioned themselves to claim estoppel against her: " '. . . the party who claims the benefit of estoppel . . . must have acted in good faith and *reasonable diligence;* otherwise no equity will arise in his favor.' 2 Pomeroy's Equity Jurisprudence (4 Ed.), § 813." *Johnson v. Ellis,* 172 Ga. 435 (5) (158 SE 39). (Emphasis supplied.)

In summary, there is no rule of law in Georgia, statutory or otherwise, which denies to Mrs. Yancey the right to hold and enforce equitable title to this land while she allows legal title to stand in the name of another. However, there is a rule of law, Code § 85-408, which required of defendants here that they ask her the source of her claim to the land in light of her flagrant, sole possession of it. Their loss here is not traceable to her actions, but to their own failure to perform their statutory duty to inform themselves through inquiry as to the true state of the title. Had they inquired and had Mrs. Yancey misrepresented anything to them, then questions of

estoppel might conceivably arise. But there was no inquiry made of her; no misrepresentation; and no notice to her of her son-in-law's actions until it was too late to prevent his giving the deed. She is not estopped to assert her claim. Code § 85-408 establishes a flat rule that one is not estopped to claim land by the mere act of allowing legal title to stand in the name of another.

The sole argument of defendants, on which they must stand or fall, is that the general rule homeowner relies on does not apply where there is a familial or other relationship between the record owner and the possessor sufficient to suggest that the possessor holds the land at the permission of the other and not inconsistently with the other's title.

The directed verdict for defendants is reversed because the rule of law on which their case is founded does not exist in Georgia. The law might support their position if the son-in-law resided on the property *with* the homeowner, but he does not. "To operate as notice, the possession must be open, visible, exclusive, and unambiguous, not liable to be misconstrued or misunderstood. It must not be mixed or ambiguous possession. So it has been held that possession of land by the grantee, holding under an unrecorded deed, *together with the grantor,* is not constructive notice of the unrecorded deed to a subsequent purchaser. Wells v. American Mortgage Co., 109 Ala. 430 (20 S 136). Where a widow contributed a part of the purchase-money of a farm, and her brother, who contributed the remainder, took title thereto in his own name without her knowledge, it was held that the fact that *she lived on the farm with him* did not give notice of her resulting trust to a purchaser from him. Harris v. McIntyre, 118 Ill. 275 (8 NE 182). The correct rule is that when the occupation by one is not exclusive, but in *connection with another,* with respect to whom there exists a relationship sufficient to account for the situation, and the circumstances do not suggest an inconsistent claim, then such a possession will not give notice of a right by an unrecorded grant. . . If, of two occupants, one has the record title, a purchaser has the right to assume that the other has no title. [Cits.]" *McDonald v. Dabney,* 161 Ga. 711, 725 (132 SE 547).

(Emphasis supplied.) Accord, *Manning v. Manning,* 135 Ga. 597 (3) (69 SE 1126); *Goodwynne v. Bellerby,* 116 Ga. 901 (5) (43 SE 275).

However, where, as here, there is no joint occupation of the land involved and defendants must rely solely on a claimed familial relation between the one in possession and the record title owner, the law does not support them. In *Hall v. Turner,* 198 Ga. 763 (32 SE2d 829), the possession of a father and mother was held sufficient to put a purchaser upon inquiry where the son, to whom the father and mother had deeded the property under an agreement that they might remain in possession for their lifetimes, attempted to sell without a reservation of their rights. To the same effect is *Waddell v. City of Atlanta,* 121 Ga. App. 94 (172 SE2d 862), wherein the possession of a wife and children under an award of temporary alimony was sufficient to give notice to a prospective purchaser from the husband. Also, in *Lewis v. Lewis,* 210 Ga. 330 (80 SE2d 312), "[t]he actual possession of the home place by the wife and children was sufficient to put Graham [the husband's attorney who was paid with a deed to the premises] on inquiry as to the claim under which she held possession. Code § 85-408. . ." *Id.* at 334-335.

The trial court erred in directing a verdict for the son-in-law's grantee, Siegel. Zimmerman, as a remote grantee, stands in no better position (*Coffey Enterprises Realty &c. Co. v. Holmes,* 233 Ga. 937; *Chandler v. Ga. Chemical Works,* 182 Ga. 419 (1b) (185 SE 787, 105 ALR 837)), and the direction of a verdict for him was also error.

*Judgment reversed. All the Justices concur, except Gunter, Jordan and Ingram, JJ., who dissent.*

ARGUED MARCH 11, 1975 — DECIDED APRIL 30, 1975.

*Nicholas N. Sears,* for appellant.
*Seigel, Grude & Amato, Alvin N. Seigel,* for appellees.

GUNTER, Justice, dissenting.

The appellant here, Mrs. Yancey, brought an action in the trial court against Edward Harris, her son-in-law, which sought to have the title to realty adjudged to be in

her rather than Harris, the then record title holder. Mrs. Yancey also joined Siegel and Zimmerman as additional defendants, because Harris had executed and delivered a security deed to the realty to Siegel who had assigned the security deed to Zimmerman. She sought to have the security deed declared null and void "on account of the notice of petitioner's rights in said property imputed to defendants Siegel and Zimmerman by Ga. Code Ann. Sec. 85-408."

The trial judge, after the completion of Mrs. Yancey's evidence to the jury, directed a verdict in favor of Siegel and Zimmerman, directed a verdict against Harris, and his judgment ordered Harris to execute and deliver a quitclaim deed to Mrs. Yancey conveying all of Harris' right, title and interest in and to the realty. Mrs. Yancey has appealed, contending that the trial judge erroneously directed a verdict in favor of Siegel and Zimmerman.

The evidence showed that the property was purchased in 1966 from Daniel K. Bennett who executed and delivered a warranty deed to Edward Harris that was properly recorded. The warranty deed to Harris was subject to a first-lien security deed to a lending institution.

Mrs. Yancey's testimony was to the effect that though title had been taken in the name of Harris, she and her husband, now deceased, had made all of the payments on the property including the original down payment and the monthly payments to the first-lien holder. She contended that Harris merely held the legal title to the property, that the equitable title was in her and her husband until her husband's death, that since her husband's death the equitable title was totally in her, and that Harris had no legal right to execute and deliver a security deed creating a second lien on her property. She further contended that she and her husband had been in possession of the property since 1966 when it was purchased from Bennett and that her possession was sufficient to give her priority of title over the second-lien security deed made to Siegel and now held by Zimmerman.

Siegel's testimony was to the effect that he had made a loan to Harris that was secured by the second-lien

security deed based on Harris' record title plus the fact that Harris had told him that his mother-in-law occupied the property and paid rent. He testified that he had inspected the property, knew that Mrs. Yancey occupied it, but that he did not ask her by what authority she was occupying the property.

Mrs. Yancey's entire case is based on a statutory provision which says: "Possession of land is notice of whatever right or title the occupant has." Code Ann. § 85-408.

However, Mrs. Yancey's claimed equitable title is dependent solely upon a deed from Bennett to Harris executed, delivered and recorded in 1966. At the time the Yanceys allegedly purchased the property from Bennett, they permitted the record title to be placed in the name of Harris, their son-in-law. Mrs. Yancey is in the position of claiming her title under the deed from Bennett to Harris and at the same time denying the title of Harris and Harris' grantee in a security deed. Where third parties who do not have actual notice are involved, I do not understand that one can claim title under a deed and at the same time deny its terms, namely, that the Bennett deed in this case conveyed title to Harris.

I think Mrs. Yancey was estopped to deny the second-lien interest acquired by Siegel and Zimmerman from her son-in-law; under the facts of this case, Mrs. Yancey and her deceased husband had, by allowing title to have been placed in Harris, created a legal situation whereby Harris could encumber the property; and Mrs. Yancey's possession in these circumstances was not notice to a purchaser from Harris that she claimed title and that Harris had no title to the property.

There was no evidence that Siegel or Zimmerman had any "actual notice" of Mrs. Yancey's claim of title; and Mrs. Yancey's possession, under the circumstances of this case, did not establish constructive notice that would defeat the second-lien encumbrance created by Harris.

In the case of *Parker v. Barnesville Savings Bank,* 107 Ga. 650, 656 ( 34 SE 365) (1899), a wife asserted title to land purchased with her funds where the legal title had been taken in the name of her husband. This court said: "In no event would he in any sense become part owner of

the land or be in a position, as against her, to deny a resulting trust as to all lands purchased with her money. But the same rule cannot be extended to a bona fide purchaser from the husband, who had no notice of the equity of Mrs. Parker. . . This doctrine proceeds upon the idea that the equity of the innocent purchaser is superior to that of the cestui que trust, who stands silently by and permits such purchaser to act to his prejudice, or who is guilty of laches in not sooner asserting a mere secret equity. It follows that as soon as a purchaser from the husband acquires his legal rights, the cestui que trust loses all claim to the property so purchased; and such purchaser cannot be compelled to litigate with, or in any way recognize, the cestui que trust as having any rights or interests in the premises. Indeed, the only footing the latter has, after a sale, is the limited privilege of showing that the purchaser was not acting bona fide, but had notice of and therefore bought subject to the secret equity. A petition for relief on any other ground is not maintainable; for, after a bona fide sale, the holder of the secret equity is effectually cut off from asserting any claim whatsoever. . . A mortgagee who in good faith parts with his money, in ignorance that a person other than the holder of the legal title has a secret equity in the mortgaged property, stands precisely in the attitude of a bona fide purchaser and is entitled to the same protection . . . In the present case, when the bank, without notice, acquired its mortgages (and no notice to it is charged in the petition), the wife was completely cut off from asserting, as against it, her secret equitable claim of ownership. As owner, she has no footing in court, unless she can show that the bank had notice of and took subject to her equity."

It is true that in that case, possession of the land was not asserted as "notice" to the mortgagee. But, in my view, that would not prevent the principle asserted in that case from being applied in the case at bar. Mrs. Yancey's "secret equity" is claimed under a deed to Harris which did not disclose the fact of his trusteeship, or the existence of her "secret equity." She and her deceased husband participated in the execution and delivery of the deed to Harris to the extent that they permitted the title to be

taken in his name and recorded in the public deed records, thereby displaying to the world Harris' ownership even though they simultaneously went into possession of the property. Under such circumstances, I do not believe that possession by Mrs. Yancey was notice, actual or constructive, of her "secret equity" as against a transferee for value from Harris, the record title holder.

I think the evidence demanded the verdict in favor of Siegel and Zimmerman, and I would affirm the judgment below.

I respectfully dissent.

INGRAM, Justice, dissenting.

Under the facts of this case, a mother-in-law permitted record title to real property to be placed in her son-in-law's name "because his income or credit rating was thought necessary [by the mother-in-law] to satisfy the mortgage lender at the time of purchase. . ." She now wants to urge a secret equity in the property against the lender's assignee because the loan was not paid by her son-in-law. The majority hold that the mother-in-law's possession was enough to put the lender on notice of her secret equity. In my opinion, this scrambles, rather than balances, the real equities in the case.

I believe the correct result would be that the lender and his assignee are insulated, by the doctrine of equitable estoppel, from the mother-in-law's claim. Under these facts, the mother-in-law was bound to know a lender would be extending credit to her son-in-law on the faith of his record ownership of the property as opposed to hers which apparently she concealed until after the loan was made and a default occurred. Meanwhile, the mother-in-law stood by and did nothing to assert the existence of the secret equity which she now claims. I would direct her claim to her son-in-law who failed to pay the loan, rather than to the lender who had no actual or constructive notice of the secret equity claimed by the mother-in-law.

The majority place the burden on the lender to discover the mother-in-law's secret equity arising solely from her possession. The son-in-law told the lender his mother-in-law was living on the land without charge as

his tenant. The effect of the majority decision is that one who loans money on real estate cannot rely on record title and the representations made to it by the record title borrower, explaining possession of his property by someone within his family circle as his tenant. The lender must now go upon the land to be encumbered to ascertain if any third party is in possession, even a member of the borrower's family. If so, the lender must obtain a quitclaim deed or at least an affidavit from the family member in possession that he or she has no secret equity in the property. Otherwise, the loan deed may be set aside and canceled at the behest of the holder of the secret equity. I do not think this is a correct equitable result.

It is significant to me that this mother-in-law had ample opportunity to tell the attorney representing the lender of her equity in the property before the loan was closed but she did not do so. I believe her silence, in these circumstances, was misleading and that she had a duty to reveal her claimed ownership at that time. Having failed to do so, I would hold that she is now estopped in equity to set aside the loan deed her son-in-law made on the property. Code. § 37-109. I agree that, ordinarily, possession is sufficient notice of whatever title, if any, the possessor may have, but, under the facts of this case, it is not strong enough to overcome the inequity to the lender and his bona fide transferee for value of being misled by these intrafamily dealings. The interest of the lender and his transferee in this case should be superior to that of the cestui que trust, who stood silently by and permitted the lender to act to its prejudice when she had an opportunity to assert her interest. Equity must blush because of its unwarranted intrusion here. See Code § 37-111. Therefore, I dissent to the majority opinion and regret the effect it will have on the real estate practice of law in this state.