S10A1970. RIGGINS v. DEUTSCHE BANK NATIONAL TRUST COMPANY et al.

(708 SE2d 266)

HINES, Justice.

Laurlene Walker Riggins appeals the trial court's order denying her motion for summary judgment and granting summary judgment to Deutsche Bank National Trust Company ("Deutsche Bank")[1] in this quiet title action. For the reasons that follow, we affirm.

Amanda Jones ("Amanda") owned and lived in a home on Stokes Avenue in Fulton County; living with her were her niece, Lillie Mae Walker, and great-niece Riggins. On June 13, 2003, Amanda executed a last will and testament, in which she devised the Stokes Avenue property to her stepson, Eugene Jones ("Eugene"). On October 27, 2003, she executed another will revoking all previous wills and devising a life estate in the property to Walker, with the remainder in fee simple to Riggins.

Amanda died on April 19, 2005; Walker and Riggins continued to live in the Stokes Avenue home, but did not offer the October 27, 2003 will for probate. On May 31, 2005, Eugene's wife, Ellene Jones ("Ellene"), filed a petition to probate the June 13, 2003 will in solemn form.[2] The Probate Court of Fulton County named Ellene executrix of Amanda's estate, and on July 21, 2005, Ellene executed a deed of assent transferring the property to Eugene. On August 24, 2005, Eugene gave a security deed on the property to Ameriquest Mortgage Company ("Ameriquest").[3] At that time, only Eugene had any recorded interest in the property. Ameriquest's representatives did only an external inspection of the property; neither Walker nor Riggins was contacted.

Riggins became aware of Ameriquest's interest in the property and on November 29, 2006 filed a motion in the probate court to vacate the letters of administration; the motion was granted on March 14, 2007, and the probate court approved the October 27,

---

[1] The full style of this party below is "Deutsche Bank National Trust Company as Trustee for Ameriquest Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-R9, Under the Pooling and Servicing Agreement Dated October 1, 2005."

[2] Through a guardian ad litem, Walker was given notice of the petition to probate the will, stated that she offered no objection, and that she knew of no reason why it should not be probated.

[3] Ameriquest eventually assigned its interest in the property to Deutsche Bank.

2003 will devising the property to Walker and Riggins. Riggins was appointed Administrator of Amanda's estate, and on June 13, 2008, she conveyed a life estate to Walker, with the remainder to herself. Eugene did not appeal these orders. It is uncontested that prior to Riggins's motion of November 29, 2006, there was no public record of the October 27, 2003 will.

Ameriquest filed a complaint to quiet title, and for a declaratory judgment and injunctive relief, on August 30, 2007. Deutsche Bank was assigned Ameriquest's interest in the property and substituted as the real party in interest; Deutsche Bank moved for summary judgment on January 13, 2010. Walker and Riggins responded and filed a cross-motion for summary judgment. In granting Deutsche Bank's motion and denying Riggins's, the trial court relied primarily on OCGA § 44-2-4 (a), which reads:

> All innocent persons, firms, or corporations acting in good faith and without actual notice which purchase real or personal property for value or obtain contractual liens on the property from distributees, devisees, legatees, or heirs at law holding or apparently holding real or personal property by will or inheritance from a deceased person shall be protected in the purchase of the property or in acquiring such a lien thereon as against unrecorded liens or conveyances created or executed by the deceased person upon or to the property in like manner and to the same extent as if the property had been purchased or the lien acquired from the deceased person.[4]

---

[4] In its entirety, OCGA § 44-2-4 reads:

(a) All innocent persons, firms, or corporations acting in good faith and without actual notice which purchase real or personal property for value or obtain contractual liens on the property from distributees, devisees, legatees, or heirs at law holding or apparently holding real or personal property by will or inheritance from a deceased person shall be protected in the purchase of the property or in acquiring such a lien thereon as against unrecorded liens or conveyances created or executed by the deceased person upon or to the property in like manner and to the same extent as if the property had been purchased or the lien acquired from the deceased person.

(b) All innocent persons, firms, or corporations which purchase real or personal property for value or obtain contractual liens on the property from a surviving joint tenant, or surviving joint tenants, holding or apparently holding real or personal property as a surviving joint tenant, or surviving joint tenants, shall be protected in the purchase of the property or in acquiring such a lien thereon as against unrecorded liens or conveyances created or executed by a deceased joint tenant upon or to the property, and as against other unrecorded instruments resulting in a severance of any joint tenant's interest, in like manner and to the same extent as if the property had been purchased or the lien acquired from the deceased joint tenant and surviving joint tenant, or surviving joint tenants.

The trial court concluded that under this statute, the priority of the security deed given to Ameriquest was protected from the interests Walker and Riggins held that were grounded in the unrecorded will of October 27, 2003.

1. Riggins first contends that OCGA § 44-2-4 (a) can have no application, as the language of the statute gives protection to purchasers and lenders "as against unrecorded liens or conveyances created or executed by the deceased"; Riggins notes that the unrecorded document here is the will of October 27, 2003, which is neither a lien nor a conveyance. However, a gift of realty by will is similar to a gift by deed. See *Smith v. Smith*, 243 Ga. 56 (252 SE2d 484) (1979). See also Hinkel, *Pindar's Georgia Real Estate Law and Procedure*, Vol. I, § 16-27 (5th ed. 1998). And, the purpose of OCGA § 44-2-4 (a) is clearly to protect those who take interests in real property from unrecorded interests created by the decedent. See Ga. L. 1912, p. 143. Accordingly, we hold that the statute applies equally to give protection to those who, as here, take an interest in realty when there are other interests that exist, but are not of record because of a failure to probate a will. See *Hadden v. Stevens*, 181 Ga. 165 (181 SE 767) (1935).

2. Riggins urges that even under an application of OCGA § 44-2-4 (a), Ameriquest cannot claim the statute's protection because Walker and Riggins were in possession of the property at the time of Eugene's execution of the security deed, and that their possession provided notice to the world of their rights in the property. OCGA § 44-5-169 provides in part that "[p]ossession of land shall constitute notice of the rights or title of the occupant."[5] However, citing a former version of this Code section, this Court has said that the "appellants' possession was *constructive* notice to the appellee of any right or title the appellants had which it could have discovered by inquiry." *Cloud v. Jacksonville Nat. Bank*, 239 Ga. 353, 354 (236 SE2d 587) (1977) (Emphasis supplied.). Accord *Palmer v. Forrest, Mackey & Assoc.*, 251 Ga. 304, 307 (2) (304 SE2d 704) (1983); *Yancey v. Harris*, 234 Ga. 320, 324 (216 SE2d 83) (1975) (" 'a purchaser of land has constructive notice of all facts affecting the title of which he would have learned by an inspection of the premises. . . .' [Cit.]"). Accordingly, the notice created by the possession of Walker and Riggins was only constructive notice. However, the protection afforded by OCGA § 44-2-4 (a) is extended to those who act "in good

---

[5] In its entirety, OCGA § 44-5-169 reads:
Possession of land shall constitute notice of the rights or title of the occupant. Possession by the husband with the wife is presumptively the possession of the husband, but this presumption may be rebutted.

faith and without *actual* notice ...." (Emphasis supplied.) Of course, the General Assembly's use of the term "actual notice" must be given meaning. *Brown v. Liberty County*, 271 Ga. 634, 635 (522 SE2d 466) (1999). Accordingly, if Ameriquest acted with only constructive notice of any claim of Walker and Riggins, the protection of OCGA § 44-2-4 (a) is still available here.

There is no evidence that Ameriquest had any actual notice of the will of October 27, 2003, or of the interests created thereby. Thus, there is nothing in the record that would render OCGA § 44-2-4 (a) inapplicable on this basis.

3. Nonetheless, Riggins also contends that Ameriquest was put on specific notice of the possession of Walker and Riggins, and urges that Ameriquest had a duty to inquire into the nature of that possession if it is to meet OCGA § 44-2-4 (a)'s standard of being a "corporation[ ] acting in good faith." Although "good faith" is not statutorily defined in the context of OCGA § 44-2-4 (a), this Court has previously noted that "Webster defines 'good faith' as 'a state of mind indicating honesty and lawfulness of purpose; belief that one's conduct is not unconscionable or that known circumstances do not require further investigation.' " *Anderson v. Little & Davenport Funeral Home*, 242 Ga. 751, 753 (1) (251 SE2d 250) (1978). Nothing in the record shows that Ameriquest acted without good faith under this, or any other standard.

Contending that there is such evidence, Riggins cites the deposition of Eugene. When asked if he had informed Ameriquest during the loan process who was living in the house, he responded:

> I told them, I told them that momma told me when she gave me the will that she made the will to me. She said, all that I want you to do is promise me that she can live there until she dies, because she don't have anyplace to live. That was my agreement. And they knew that. . . . I said, well, Lillie Mae [Walker] is supposed to live there until she dies. That was my understanding with momma, that she could live there until she dies. She don't have to worry about anything; I will take care of it.

He also testified in his deposition that he told Ameriquest's representative that "Lillie Mae and her daughter" were living in the house.

The cited testimony does not demonstrate Ameriquest's failure to act in good faith. It does not show that Eugene informed Ameriquest of any ownership interest potentially held by Walker; rather, it showed that Walker's presence in the house was pursuant

to Eugene's promise to his stepmother. But, such presence is not notice of an ownership claim.

> Possession of land is generally notice of whatever right or title the occupant has. To have this effect the possession must have some element in it indicative that the occupancy is exclusive in its nature. Such possession must be open, visible, exclusive, and unambiguous, not liable to be misconstrued or misunderstood. It must not be a mixed or ambiguous possession.

*McDonald v. Taylor*, 200 Ga. 445, 451-452 (1) (37 SE2d 336) (1946) (Citations and punctuation omitted.). The evidence Riggins now cites does not meet this notice standard; the evidence was that Walker's possession was, in fact, *not* exclusive, but that she merely lived in the house owned by Eugene.[6]

> The correct rule is that when the occupation by one is not exclusive, but in connection with another, with respect to whom there exists a relationship sufficient to account for the situation, and the circumstances do not suggest an inconsistent claim, then such a possession will not give notice of a right by an unrecorded grant. [Cit.]

*McDonald v. Dabney*, 161 Ga. 711, 726 (2) (132 SE 547) (1926), overruled on other grounds, *Cole v. Thrasher*, 246 Ga. 683, 684 (272 SE2d 696) (1980). There was such a relationship here, and Ameriquest's failure to inquire further regarding Walker's status in the house does not show a lack of good faith.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 18, 2011.

*Stephen M. Krumm, Anna-Elisa Mackowiak*, for appellant.
*Eugene R. Jones, Lisa B. Perlstein*, for appellees.

---

[6] In support of this argument at trial, Riggins pointed solely to what she claimed were contradictions in Eugene's loan application documents, in that: (1) he stated the Stokes Avenue address was his current home, while elsewhere in the documents he stated a different address was his residence, and (2) he stated the Stokes Avenue address was to be his primary residence, and elsewhere stated that it was for "investment." Neither of these circumstances give notice of any ownership interest held by any other person.