# CHARLESTON.

## KING *et al. v.* PORTER *et al.*

Submitted September 9, 1909. Decided April 4, 1911.

1. **VENDOR AND PURCHASER—*Bona Fide Purchaser—Notice.***
   To be notice to a purchaser, possession of land by one other than the vendor must be actual, distinct and visible. It must

be such as is inconsistent with the title of the vendor. A mere unoccupied improvement is not notice of another's rights. (p. 84).

2. SAME.
   A purchaser with notice from a purchaser without notice is protected in his title. (p. 84).

(BRANNON, JUDGE, absent.)

Appeal from Circuit Court, Randolph County.

Bill by J. J. King and others against W. A. Porter and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

*W. B. Maxwell,* for appellants.

*Talbott & Hoover,* for appellees.

ROBINSON, JUDGE:

By this suit the heirs of Peter King claim title to 150 acres of land as against H. Yokum, Trustee, and the Roaring Creek Lumber Company. The plaintiffs allege title and possession in themselves and seek to annull the claim of title on the part of the defendants as a cloud. From a decree dismissing the bill on a hearing, the plaintiffs have appealed.

The merits of the case are against the plaintiffs, and the decree is plainly right. It is useless to consider the question of the demurrer to the bill, and some other minor questions that have been raised. While we assume the broadest view, in every particular, that can be taken for the plaintiffs, we cannot grant them relief.

In 1856, Peter King purchased of Henry O. Middleton 150 acres of land by a contract in writing which was never recorded. The vendee took possession of the land and resided thereon until 1870. He then removed to Grafton, and later to Pittsburg, residing at the latter place until his death, in 1897. It is claimed that he left the land in charge of John A. King, who lived on a tract adjoining. But, even though we look to testimony that cannot properly be considered in the cause, certain it is that there is no evidence as to actual possession of the land in behalf of Peter King after he left the premises, except for the short period of a year or two, and that only of the most desultory and uncertain nature. The fences around the limited improvements

which Peter King had made were totally destroyed by fire, and the small area that he had improved in time became covered with brambles, laurel, and second growth timber. Some stones of a chimney only were left to indicate that there had once been a house on the land. The land lay in mountainous region and was a part of the unfenced forest. Peter King never had the land entered for taxation and never paid any taxes thereon. Nor did he ever take steps to obtain a deed from Middleton, or to protect the tract from the adversary possession of others. The whole story, only a few details of which we have given, indeed makes a case of abandonment of the land and relinquishment of claim to ownership thereof.

Now, this tract of 150 acres was a part of a large territory of land embraced in several adjoining surveys that had been patented to Middleton. Middleton died in 1867. His will empowered his personal representatives to sell the lands owned by him in this state. The administrator with the will annexed, in 1874, sold and conveyed to Totten a tract of 1050 acres which included the Peter King parcel. The deed described the land conveyed, by specific metes and bounds, and then immediately recited: "Containing one thousand and fifty acres more or less, the tract of land being the residue unsold out of several larger surveys granted to Henry O. Middleton, to-wit: one survey of 1000 acres, one of 825 acres, one of 6000 acres, and one of 1650 acres." There is no evidence that anyone had any sort of possession of the Peter King parcel at the time Totten purchased the 1050 acres which embraces it. Nothing in the case brings notice to Totten of any rights of Peter King, unless it be the fact that there were no doubt evidences that at a prior time some one had been in possession and made small improvements. But Peter King had left the land before Totten purchased, and it is not proved that Totten was put on notice or even inquiry of King's rights, unless the mere evidences of former improvement did it. It does not even appear that a house stood on the land at this time. A little later Totten conveyed to Kutz and others, and one Jabez Wolley became an owner of an interest in the 1050 acres. Wolley maintained a tenant, Lantz, on the 1050 acres for several years prior to the conveyance of the same made by Wolley and others to Yokum, Trustee, and Lantz continued as the tenant of the latter to the time of the institution of this

suit. So the defendants and those under whom they hold have had actual possession under the Totten deed to the 1050 acres for a period longer than the statutory bar.

In 1905, one of the heirs of Peter King·came from Pittsburg and took up his residence on the 150 acres. The Coal & Coke Railroad had been built through the tract, and the land had evidently become quite valuable. No more was it the wild, cheap mountain land which his father had deserted and failed to protect from the ownership of others. On behalf of himself and the· other heirs, he sought the legal title which his father had failed to call in from Middleton. By a suit against Middleton's heirs only, some of ·whom were proceeded against as unknown, the heirs of Peter King ·were given a deed, through the offices of a special commissioner. It is upon a legal ·title so obtained that the plaintiffs by this suit seek to cancel the title of Yokum, Trustee, as far as it affects the 150 acres, and to enjoin the cutting of the timber thereon by the Roaring Creek Lumber Company which now owns the standing timber on the 1050 acres through a conveyance of the same by Yokum.

Presumably the taxes on the whole 1050 acres were paid by Middleton and those that succeeded him in title through the conveyance made by his administrator. That fact being true, and the legal title to the 150 acres not having been severed from that to the 1050 acres, the King claim cannot be considered as forfeited for non payment of taxes. If King had good equitable title to the 150 acres, of which those who purchased the 1050 acres had notice, and the owners of the 1050 acres paid the taxes on the whole, they did so in King's behalf, as far as the 150 acres was concerned, since they must be considered as trustees holding the legal title for him. We do not consider the question of forfeiture as pertinent. But a pertinent question is: Did Totten buy and take a conveyance from Middleton's administrator with notice of King's rights under his contract of purchase?

We have stated that the evidence shows no notice to Totten relative to King's .rights, at the time he purchased, unless it be that the mere mark of a former improvement on the land put him on inquiry. Did it do so? It is certainly true that·one purchasing land must take notice of the rights of another in actual possession of the land. 13 .Enc. Digest, Va. & ·W. Va., 598; also *Preston·* v. *West,* decided this· term. . But to be notice

the possession must be actual and existing. It must be that which is inconsistent with the title for which the purchaser is negotiating. A mere mark of former possession is not notice, for that is entirely consistent with the legal title. A vacant house or unoccupied field does not put a purchaser to notice. Neither raises a presumption against the legal title, for it is by no means inconsistent with one's title to have such things on land. The following from a standard work is in point: "With respect to the character of possession which is sufficient to put a person upon inquiry, and which will be equivalent to actual notice of rights or equities in persons other than those having a title of record, it is well established by an unbroken current of authority that such possession and occupation must be actual, open and visible; it must not be equivocal, occasional or for a special or temporary purpose; neither must it be consistent with the title of the apparent owner of record. All the cases agree that notice will not be imputed to a purchaser except where it is a reasonable and just inference from visible facts; and these can only exist where there is an exclusive possession, actual and distinct, and manifested by such acts of ownership as would naturally be observed and known by others." 1 Warvelle on Vendors, section 271.

The argument that the Roaring Creek Lumber Company had notice of the King claim before it purchased is not tenable, even if the fact asserted is true. That company is protected because it is a purchaser of the Totten title. Since Totten purchased of Middleton's administrator without notice of King's rights, then those who hold under Totten are protected, even if they had notice. A purchaser with notice from a purchaser without notice is protected in his title. If it were otherwise an innocent purchaser might be deprived of the benefit of disposing of his estate. 2 Minor's Inst. (4th ed.) 234; 13 Enc. Digest, Va. & W. Va., 589.

Plaintiffs urge that the deed to Totten, by the recital in it which we have quoted above, imparted notice of the King claim to him and all who hold under him. In other words, they say that the deed by the use of the words "the tract of land being the residue unsold," gave notice that there were vended parcels within the 1050 acres conveyed. This recital surely imparts exactly the contrary sense to that claimed for it. The clause

virtually says that none of the land within the boundary of the 1050 acres has been sold. It indeed asserts that all within the boundary was "unsold."

The defendants, as parties holding under one who was a purchaser without notice, are protected against the claim of plaintiffs. The title of defendants is not a cloud on plaintiffs' rights; it is the real protected title to the land. Even were defendants not protected on this score, it would seem that plaintiffs would be barred from the relief sought by reason of laches and adversary possession. But it is unnecessary to discuss these features of the case.

An order will be entered affirming the decree.

*Affirmed.*