## McDONALD et al. v. DABNEY; et vice versa.

1. Where a motion for new trial was overruled on April 25, 1925, the bill of exceptions reciting that the hearing was had during term time, and where the court did not adjourn within thirty days from the date of the organization and opening of the court, and where the bill of exceptions was presented and certified on May 30, 1925, which was within sixty days from the date of the judgment overruling the motion for new trial, the bill of exceptions will not be dismissed on the ground that it was not presented to the judge within the proper time. Civil Code (1910), § 6152.

2. The court sustained certain exceptions of fact filed by the plaintiff to the findings of fact by the auditor. The order sustaining these exceptions provides "that the issues of fact involved in said exceptions be referred to a jury, by appropriate questions to be propounded to the jury as the court shall determine to be suitable and proper at the time of the submission of the issues of fact to the jury." To the provision of the order that the issues of fact involved in said exceptions be referred to a jury "by appropriate questions to be propounded to the jury as the court shall determine to be suitable and proper," the defendants excepted pendente lite on the ground that the same was contrary to law; and they assign error on these exceptions in their bill of exceptions in this case. *Held:*

(a) Where exceptions of fact to the report of an auditor are filed, the judge shall cause each issue thus made to be submitted to the jury; and in all cases the jury shall find for or against such exceptions submitted, seriatim. Civil Code (1910), § 5146. *Harris* v. *Lumpkin,* 136 *Ga.* 47 (70 S. E. 869); *Whitfield-Baker Co.* v. *Anderson,* 147 *Ga.* 242 (93 S. E. 406).

(b) The issues of fact involved in such exceptions can not be referred to the jury, independently of and without reference to the findings of the auditor, by such questions as the court shall determine to be suitable and proper, at the time of the submission of the issues of fact to the jury; but each exception of fact must be submitted to the jury under appropriate instructions to determine whether they sustain or

---

Appeal and Error 3 C. J. p. 540, n. 49; p. 1383, n. 35    New.    4 C. J. p. 79, n. 47; p. 247, n. 24; p. 721, n. 56; p. 832, n. 48; p. 842, n. 60.

Constitutional Law 12 C. J. p. 1240, n. 96 New.

Costs 15 C. J. p. 32, n. 47; p. 140, n. 91; p. 177, n. 44 New; p. 185, n. 1; p. 186 n. 2.

Deeds 18 C. J. p. 313, n. 36; p. 314, n. 37.

Estoppel 21 C. J. p. 1073, n. 45, 45 New.

Partnership 30 Cyc. p. 428, n. 23; p. 735, n. 69; p. 737, n. 73; p. 741, n. 5 New.

References 34 Cyc. p. 863, n. 10; p. 895, n. 16.

Tenancy in Common 38 Cyc. p. 15, n. 62.

Trial 38 Cyc. p. 1612, n. 14; p. 1661, n. 62.

Trusts 39 Cyc. p. 104, n. 12; p. 113, n. 67; p. 129, n. 31; p. 166, n. 89.

Vendor and Purchaser 39 Cyc. p. 1744, n. 85; p. 1748, n. 98, 3; p. 1785, n. 12.

find against the findings of fact made by the auditor. In no case, when exceptions to findings of fact by the auditor are filed, can the court submit all issues of fact raised by the pleadings and evidence to the jury for their determination, as if the case had not been submitted to an auditor, over the objection of a party. The court having construed this provision of the order as providing for such submission and having acted upon such construction in trying the case, this provision of the order was contrary to law.

(c) The assignment of error that this provision of the order was contrary to law is sufficient. *Pace* v. *Pace*, 154 *Ga.* 712 (115 S. E. 65).

3. On the trial of exceptions of fact to the report of the auditor, which exceptions had been duly approved by the court, the court charged the jury as follows: "Now you take this case, gentlemen, as an original proposition in the matter. It is your duty to pass on it under the evidence in the case. In so doing, you will not be influenced in any manner whatsoever by the findings of the auditor. The auditor's findings in the case, one way or the other, should have nothing to do with your deliberations; you are not bound by his findings; you should not be influenced by any finding that the auditor may have made, or that he may have failed to make in the case. You are trying the case as an original proposition under the evidence in the case, and it is your duty, as upright, intelligent, impartial jurors, acting fairly and impartially in the matter, uninfluenced by anything outside of the evidence in this case and the principles of law that the court will give you in charge, and your deliberations under all the facts and circumstances of the case, under the evidence in the case—it is your duty, acting, I say, fairly and impartially in the matter, to reach a verdict that will speak the truth as you think the truth is under all the facts and circumstances of the case, under all the evidence in the case, taking the principles of law in the case as given you in charge by the court. . . . Now I am submitting this case to the jury without any reference to anything that the auditor has decided, and the court is controlling the case and sending it to the jury as an original proposition for the jury to decide under the facts and evidence in the case, and not to be influenced in any way by what the auditor may or may not have found in the case—the court has taken it from the auditor and is sending it to you, gentlemen of the jury, as an original proposition. *Held:*

(a) The findings of fact by an auditor are prima facie true, and the burden of overcoming such findings rests upon the party making the exception. *Adair* v. *St. Amand*, 136 *Ga.* 1 (70 S. E. 578); *Livingston* v. *Wynne*, 147 *Ga.* 307 (93 S. E. 877). It follows that the court erred in giving the above instructions to the jury.

(b) The fact that, upon the determination of the court to require the jury to find a special verdict of the facts only in the case, counsel for the defendants submitted an issue of fact which they claimed arose under the pleadings and evidence in the case and should be passed upon by the jury, did not authorize the court to give said instruction to the jury. Upon the trial of exceptions of fact to an auditor's report, whether such trial is had under the method provided for in the

Civil Code (1910), § 5146, or under the method pursued by the court in this case, the findings of fact by the auditor are prima facie true, and the burden of overcoming them rests upon the exceptor.

4. The court charged the jury as follows: "A joint interest in the partnership property, or a joint interest in the profits and losses of the business, constitutes a partnership as to third persons. A common interest in profits alone does not." Movants except to this charge upon the ground that it was not applicable under the facts. *Held*, that this exception was well taken. The question of the existence of this partnership as to third persons was not involved.

5. The court charged the jury as follows: "If you should find that Mr. Dabney had no interest in the real estate under his agreement and relations with McDonald, then the question of whether he consented or approved of the conveyance would not be material." Movants except to this charge upon the ground that it assumes the existence of an agreement between Dabney and McDonald, when the existence of such agreement was one of the strongly disputed questions in the case. *Held*, that this instruction was erroneous for the reason assigned.

6. In the 11th, 12th, 13th, 14th, 15th, and 16th grounds of the motion for new trial, movants complain that the court erred in refusing to give in charge to the jury certain principles of law embraced in requests which were timely preferred. In these grounds it is not alleged that these requests were preferred by movants. It not being alleged that these instructions were requested by the defendants, we can not say that they were hurt by the refusal to give them. Before a party can complain of the refusal of the court to give instructions embraced in requests, it must appear that such requests were preferred by the complaining party.

7. Movants insist that the court erred in propounding to the jury the series of questions it submitted to them, on the ground that the only questions which should have been put to the jury were whether the findings of fact by the auditor were true. Under the ruling made in headnote 2, the court erred in propounding such series of questions. Movants, having expressly excepted to an order providing for the submission to the jury of such questions as the court might think appropriate in eliciting the facts of the case, which exception was properly preserved by exceptions pendente lite, on which error is assigned in their bill of exceptions in this court, are not now estopped from complaining of the series of questions propounded by the court by reason of their participation in shaping these questions; movants at the time expressly reserving their said exception to this mode of trial. In *Malette* v. *Wright*, 120 *Ga.* 735 (48 S. E. 229), the parties agreed that the jury should not pass upon each exception of fact, but that all matters of fact should be submitted as a whole, to be decided either for the plaintiff or the defendant. In *Pearce* v. *Smith*, 160 *Ga.* 337 (127 S. E. 764), the case was submitted to the judge under an order in which it was provided that he might render a final decree, or such other decree as he saw fit, in vacation.

8. Possession of land is notice of whatever right or title the occupant has.

(*a*) Possession is notice of the rights of those under whom the possessor claims.

(*b*) The possession of land which will be notice of the occupant's title must have some element in it indicative that the occupancy is exclusive in its nature.

(*c*) The protection which the registration law gives to one taking title to lands upon the faith of the record title should not be destroyed except upon clear and satisfactory evidence showing a clear equity in him who seeks to establish a right in hostility to the record title.

(*d*) Such possession must be actual, open, visible, exclusive and unambiguous.

(*e*) Applying the above principles, the plaintiff did not make out a case which entitled him to recover from Luetta T. Boddie the property bought by her from Elizabeth Dabney, the grantee of McDonald, located at 202-204 West Mitchell Street, said Elizabeth Dabney having record title to these premises, and said Luetta T. Boddie having bought in good faith, for value, and without notice of the alleged secret equity of the plaintiff, except such as is to be imputed to her from the facts which he sets up as showing possession in him, which we hold insufficient for that purpose.

9. If the grantor has title to or an interest in land, a deed of quitclaim is just as effective to pass that title as a deed with covenants of warranty.

(*a*) Where the grantor in such deed conveys to the grantee, his heirs and assigns, "all his right, title, interest, claim, or demand" which he "has or may have had in and to the tract of land conveyed," the grantor will be estopped from asserting any title to or interest in the property conveyed, acquired previously to the execution of such quitclaim deed, although it contains a recital that it was made for the purpose of releasing all rights acquired by the grantor under a quitclaim deed from a named party. The quantum of estate conveyed in the granting clause is not cut down by such recital.

(*b*) Applying the above principles, the plaintiff was not entitled to recover from his wife an undivided half interest in the lands known as 110-112 West Mitchell Street, in the City of Atlanta; and a verdict in his favor for such interest is contrary to the evidence.

10. A trust is implied whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another.

(*a*) Where land is bought in whole or in part with money contributed by one of the members of a firm, and the legal title is taken in the name of the other member, under an agreement that the latter is to hold the land for the use of the firm, an implied trust arises in favor of the partnership, and the members become equitable owners and equitable tenants in common of the land.

(*b*) A resulting trust, which arises solely from the payment of the purchase-price, is not created unless the purchase-money is paid either before or at the time of the purchase.

(*c*) To engraft an implied trust upon an absolute deed by parol evidence, such evidence ought to be clear and satisfactory.

(*d*) In an equitable petition brought by one partner against another, for an accounting, for the establishment of his interest in the part-

nership assets, and for the recovery of an undivided half interest in real estate held in the name of the partner proceeded against, on the ground that such real estate was purchased with funds of the firm and title taken in the name of the partner for the use of the firm, the burden was on the plaintiff to show that, upon full accounting between them as to the partnership assets, he was entitled to an undivided half interest in the realty. Proof alone that such realty was bought with partnership funds would not entitle the complainant to an undivided half interest in such realty.

(e) In carrying such burden the plaintiff would not be required to show how much of the funds of the partnership, or how much of the funds contributed by him to the capital of the firm, was expended in the purchase of each piece of such realty, if the same was purchased in whole or in part with assets of the firm, under an agreement between the partners that it should be bought with the firm's money and title taken in the name of one of the partners who was to hold the same for the use of the firm. In such circumstances such real estate will be treated as firm assets; but the interest of each partner therein will be determined by the result of the final account taken between them.

(f) When one partner leaves the State and abandons the control and management of the partnership to the resident partner, the latter does not become the sole owner of the business and assets of the firm by that fact alone; and in a proceeding brought by him against the former for accounting and establishment of his interest in the joint assets, he must account for all assets of the firm and all profits made in the conduct of the partnership business.

11. It follows from the rulings above announced that the trial judge erred in the respect pointed out in headnote 2, and in refusing to grant a new trial.

12. The trial judge in the final decree assessed one half of the court costs, including the fees of the auditor and stenographer, against the plaintiff. To this portion of the decree the plaintiff, in the cross-bill of exceptions, excepted on the grounds that it was contrary to law and was an abuse of the discretion of the court under the law and facts of this case. Held:

(a) In an equity case it is the province of the judge to determine upon whom the costs shall fall. Civil Code (1910), § 5423.

(b) Auditor's fees may, in the discretion of the court, be apportioned between the parties. Central Ry. Co. v. Central Trust Co., 135 Ga. 472 (6) (69 S. E. 708).

(c) The stenographer's fee for reporting the evidence in a case shall be paid upon such terms as the parties may agree upon; and if no agreement is entered into as to the payment thereof, then in such manner as may be prescribed by the presiding judge. There being no agreement between the parties as to the payment of this fee, the presiding judge was authorized to fix the terms of the payment.

(d) No abuse of discretion by the court in these matters is made to appear.

13. The court rendered separate judgments against the plaintiff for one half of the fees awarded the auditor and stenographer. Plaintiff had

no notice of and hearing on the taking of these judgments; and he excepted to the same on the grounds (1) of lack of such notice and hearing, (2) that the main decree is contrary to the law and evidence, and (3) that the court could not allow these fees as costs. *Held:* A party is not denied due process of law where costs are taxed against him without notice and an opportunity to be heard. His remedy is by motion for retaxing the cost, and not by writ of error in the first instance. *McGuire* v. *Johnson*, 25 *Ga.* 604; *Markham* v. *Ross*, 73 *Ga.* 105; *Thornton* v. *McLendon*, 99 *Ga.* 590 (27 S. E. 186). If, upon the hearing of such motion to retax the costs, the court should tax against the movant any costs for which he was not liable, such error could be reached and corrected by writ of error to this court. *Baker* v. *Bancroft*, 79 *Ga.* 672 (5 S. E. 46).

14. Applying the above principles, the assignments of error in the cross-bill of exceptions are without merit.

Nos. 4948, 5000.   February 10, 1926.   Rehearing denied
February 24, 1926.

Equitable petition. Before Judge Humphries. Fulton superior court. April 25, 1925.

A petition was brought by Joseph T. Dabney against James McDonald, Elizabeth Dabney, the wife of plaintiff, and Luetta T. Boddie, for an accounting between plaintiff and McDonald as to partnership assets, for establishment of plaintiff's interest therein, and for recovery of a half interest in certain described real estate, upon the ground that funds of the McDonald Furniture Company, of which plaintiff and McDonald were partners, had been invested in said property under an agreement between plaintiff and McDonald, by which the title to this real estate was taken in the name of McDonald and was to be held by him for said firm. He further sought to have cancelled the deeds made by McDonald to Elizabeth Dabney, and a deed made by the latter to Luetta T. Boddie, embracing the property known as 200-204 West Mitchell Street. The defendants denied this contention of the plaintiff, and denied that he had any interest in this real estate on the ground that funds of this firm had been invested therein. They further denied the existence of said partnership. The case was referred to an auditor, who made his report. The plaintiff filed certain exceptions of law and of fact to the findings of the auditor. The findings of fact by the auditor were as follows: (1) That the evidence does not establish the definite interest in the real estate in controversy. (2) That the complainant has no title to the real estate described in the

bill. (3) That there was no partnership between complainant and respondent McDonald; and if complainant has any monetary claim against respondent McDonald, it is merely an action at law for money had and received. The trial judge sustained the plaintiff's exceptions to these findings of fact, and in his order provided "that the issues of fact involved in said exceptions be referred to a jury, by appropriate questions to be propounded to the jury as the court shall determine to be suitable and proper at the time of the submission of the issues of fact to the jury." To this provision of the order the defendants excepted, and alleged that the same was erroneous because contrary to law.

The case proceeded to trial. The court submitted the case to the jury independently of and without any reference to the report of the auditor, and propounded to the jury these questions: 1. Was there a partnership prior to September 9, 1915, as alleged in the petition, between James McDonald and J. T. Dabney? 2. What interest did J. T. Dabney have in such partnership, if there was a partnership? 3. Was the property at 110-112 West Mitchell Street, and 200-204 West Mitchell Street, and the other properties described in paragraph eight of the petition, assets or property of the partnership, if there was a partnership? 4. What interest, if any, did J. T. Dabney have in said real property? 5. If the jury find that J. T. Dabney had an interest in the real estate involved in this suit, did James McDonald convey it to Mrs. Elizabeth T. Dabney with the consent and approval of J. T. Dabney? 6. Was J. T. Dabney in possession either by himself or tenants, of 200-204 West Mitchell Street, claiming a personal interest therein at the time of the alleged purchase of said property by Luetta T. Boddie, and at the time the deed was made to her to such property by Mrs. Elizabeth Dabney, August 25, 1922? These questions were propounded to the jury after consultation with counsel for both parties as to the form of questions to be propounded to the jury. Both sides made suggestions as to the forms of questions to be propounded, question 5 being suggested by counsel for the defendants; but "counsel for defendants did not waive their exceptions to the order of the court of November 28, 1924, referring the issues of fact to a jury by appropriate questions. They cooperated with the court in preparing the questions to be sub-

mitted to the jury, with a view to covering the issues in the case, after the court had directed that the case be thus submitted to the jury, but without waiving their exceptions pendente lite to said order of the court." The jury· returned a verdict answering questions Nos. 1, 3, and 6 in the affirmative. In answer to question 2 they found that the plaintiff had a half interest in the partnership. In answer to question 4 they found that the plaintiff had a half interest in the real property involved in this case. They answered question 5 in the negative. The defendants moved for a new trial upon the general grounds, and by amendment added various special grounds. The court overruled the motion for a new trial, and they excepted.

The case was tried before the jury upon the evidence introduced before the auditor. The evidence for the plaintiff tended to establish the following facts: In the latter part of April, 1902, plaintiff went into the furniture business with McDonald, under the firm name of McDonald Furniture Company. His wife brought $400 and he brought $100. Under his advice his wife gave her $400 to McDonald to put in the furniture business. In the following summer he put into the business nearly $400. He received $1000 from the estate of his brother, which he put in the business. With this money he put a shed and workshop to the rented building in which they were conducting the furniture business. He bought a horse for $36. They enlarged the store at 110 West Mitchell Street, and afterward rented 112 West Mitchell Street, where the present store is. After enlarging 110 West Mitchell Street and renting No. 112 on that street, they had to pay more rent. Before they bought the property 110-112 West Mitchell Street, they made it larger, built some wings and a back. Afterwards they bought 110-112 West Mitchell Street. The title was put in McDonald's name for the protection of the property and the business. In 1911 plaintiff and others organized a liquor club in Atlanta. Plaintiff furnished the furniture and the hall, and his salary was $100 a month until the last of November, 1912. His salary was put in the furniture business, or in property investments. After November, 1912, plaintiff got a salary of $240 a month from this club, and ten per cent. of the gross income, until September 1913. He turned over his salary and commissions to McDonald.

In March, 1913, plaintiff turned over to McDonald eight hundred and seventy-odd dollars from his commissions of ten per cent. and $1300 from his salary. He received the salary of $240 per month for 21 months. He paid this amount and all other moneys he got from the liquor club to McDonald. After May 1, 1916, he got $200 a month. McDonald left Atlanta in September, 1915. Up to the time McDonald left, he got every cent of this money. His ten per cent. in March, 1913, amounted to $879.30. He had whisky rebates of $2 per case for all liquor bought by him. He bought 21 cases a month. He gave this to McDonald. He sold about 300 cases of Mud Lick and Dairy Maid, from which he got $1.50 per case. After McDonald left, plaintiff's daughter, Dorothy, sent the former $1 a day from the business. This continued up until about two years before the trial of this case.

There was a loan on 202-204 West Mitchell Street for $3,500. Plaintiff paid the interest thereon for six years, at eight per cent. Under the power of attorney which he then had from McDonald, he renewed this loan in the latter's name, and paid $175 for commissions. In this six years time he paid $900 insurance on this property, and a loan of $900 on the store. Plaintiff had charge of the property 202-204 West Mitchell Street when McDonald left. He rented the property to various negroes. The last tenant he had was a woman, who was still in the premises. On August 25, 1923, she was on the premises. He made repairs on this property before he heard of the deed to Boddie, made repairs thereon between August and October. Was notified in October that McDonald had conveyed this property to Elizabeth Dabney. Plaintiff put the property in the hands of M. L. Thrower, and never took it out of his hands. He, his wife and children, and McDonald occupied apartments in the upstairs of the furniture store at 110-112 West Mitchell Street. Mrs. Dabney said plaintiff was a partner with McDonald, many times. Plaintiff testified that they paid $2,400 for the property at 202-204 West Mitchell Street. They erected on it a brick apartment for negroes, at a cost of $3,000. They assumed a loan on 204 West Mitchell Street. They put in the rear fourteen rooms. In discussing the widening of West Mitchell street, McDonald referred to this property as our property. Plaintiff em-

ployed nearly every man, and fired all of them. Plaintiff testified that McDonald did not own any interest in the business; that it became his business when he had to rebuild it. Plaintiff, his family, and McDonald lived very largely out of this business for thirteen years. Plaintiff worked in the business from 1902 until McDonald left in 1915. McDonald collected the cream of the accounts just before. he left here. Rents of the property standing in the name of McDonald were applied, after he left, to the upkeep of the property. The business was built mainly on the money from the liquor club. When McDonald left, the debts were around $2,000. The accounts amounted to about $25,000. They were worth about $5,000.

John Jentzen testified that, after McDonald left, Dabney paid some of the purchase-money notes on the property.

Plaintiff was unable to state how much of the money he furnished McDonald, pertaining to any one piece of property. Plaintiff bought one house and lot and put the title in his wife's name. He testified that he and McDonald were equal partners in the business. He permitted the taxes on the property go unpaid. The property at 110-112 West Mitchell Street was sold for the taxes, and bought in by one Grant. Plaintiff afterwards acquired a quitclaim deed from Grant to this property. Afterwards he released this property to McDonald. He received for this release $500 paid to Mather Brothers, and about $200 to Rosenfeld. Did not recollect that he had received $1500 which he had put in the bank. In paragraph three of the petition he alleged that McDonald and he entered into a partnership agreement, and that he invested in the business $700 in cash, and in exchange therefor was to have an equal interest in the business with McDonald. James McDonald was in the heading of the stationery. McDonald conveyed all of the property in which the plaintiff now claims an interest, except two pieces of income-bearing property, to plaintiff's wife. Plaintiff testified that when McDonald left he gave to him power of attorney to manage this property, and he operated it under that power of attorney. This power of attorney was revoked on June 20, 1921. McDonald then gave to his niece, Dorothy Dabney, power of attorney to manage this property. Plaintiff did not know how much money he had received from the various properties standing in the name

of McDonald after the latter left Atlanta. The property was badly run down, and not more than half of the wooden houses were rented. Many months he collected less than $60 per month. If it had been all in good shape and rented, it would not have gone over $80 per month. He did not know anything about the amount of the rentals that he had received from the property. He never paid anything for the rent of the property known as 110-112 West Mitchell Street; but he testified that he put in this property ten times its value, by paying purchase-money notes, taxes, insurance, and repairs. He never signed any of the notes at the bank when McDonald was here. Plaintiff introduced witnesses that corroborated him as to the money he received from the liquor club by way of salary. He testified that he did not hear that McDonald had deeded this property to his wife until he was notified to turn it over to Adair for rent. He testified that from 1915 to the date of this suit he was in possession of 202-204 West Mitchell Street; that he rented it to tenants and made leases on it; that he was in possession of the property at 110-112 West Mitchell Street; that the rent he got from 202-204 West Mitchell Street was $75 per month until Thrower took it and raised the rent; and that all the rents of the properties went into the bank, with the funds of the store, all in one fund.

Witnesses testified that Dabney employed help at the store and discharged them, and that plaintiff and McDonald were engaged in operating the store. Plaintiff introduced a statement by Thrower, of rents collected from June 30, 1922, to and through September, 1922, $1,205.50, which was turned over to the clerk of the superior court under garnishment proceedings in a suit against the firm.

The defendants introduced evidence tending to establish the following: There was no partnership between McDonald and Dabney. When McDonald went to Texas in September, 1915, he gave to Dabney a general power of attorney to manage all of his real estate fully, and with power to mortgage and sell the same. This power remained in force until June, 1921, when it was revoked by McDonald, who gave a similar power to Dorothy Dabney, the daughter of plaintiff and niece of McDonald. In depositions taken in this case on May 21, 1924, Dabney testified, that he turned over to McDonald about $1200, which went into

46

the general funds of the McDonald Furniture Company; that the property was bringing in about $148 per month from rents; that he had no agreement with McDonald as to what interest he was to get in this property by virtue of the payments he made after McDonald left, that his contention was that McDonald had ceased to be a member of the McDonald Furniture Company as soon as he left Atlanta, and that the business was almost broken; that the power of attorney from McDonald to him was revoked because the women folks were going with James McDonald, and wanted to make some disposition of the property; that he made no objection to their making the loan of $5,000 on the property at 110-112 West Mitchell Street. A signature card filed with the Fulton National Bank by McDonald Furniture Company on November 4, 1910, was signed by James McDonald. In a statement signed on December 1, 1913, in the handwriting of James McDonald, of the condition of the McDonald Furniture Company, McDonald was named as proprietor, and in this paper it was stated that the value of his equities in the property referred to in this litigation was $60,605, and that his liabilities were $1,800, plus State and county taxes. A statement made by James McDonald on January 21, 1911, showed accounts secured by contract for $2,000, $2,000 of deferred notes, stock about $5,000, insurance on buildings $800, and amounts paid on lots held on bond for title $425, and on notes about $1100; that he owned three horses and wagons; and that he owed in the business less than $1,500. A statement was made by McDonald to Fulton National Bank on February 16, 1912, affirming that he was doing business as McDonald Furniture Company, and giving a statement of his assets and liabilities. When McDonald left Atlanta the business was in first-class condition. McDonald denied making any agreement with Dabney by which he was to have any interest in the real estate involved in this case. He testified that his idea of accumulating this property in Atlanta was to give it to his sister and nieces, as they would not have anything otherwise.

Dorothy Dabney denied that there was any partnership between plaintiff and McDonald, and testified that plaintiff worked for McDonald two days in the week.

Defendants introduced a statement of the affairs of the Mc-

Donald Furniture Company, made by Dabney, dated October 26, 1917, in which it was stated that Dabney was admitted into the partnership in the spring of that year. On July 29, 1922, plaintiff wrote to his daughter Dorothy Dabney, and stated that one Higginbotham was in to see him the day before, and said that he (Higginbotham) had an offer for 202 West Mitchell street, for $12,000; that one Smith had stated that Elizabeth and Dorothy Dabney should keep this property as an income; that he wished his wife would get all of the property; and that if they ever got out of debt she and the kids would have a little income regularly. By deed dated March 23, 1922, from Joseph T. Dabney to James McDonald, Dabney quitclaimed to McDonald, his heirs and assigns, "all his right, title, interest, claim, or demand which said party of the first part has or may have had in and to" the property located at 110-112 West Mitchell Street. It contained this provision: "This deed made for the purpose of releasing all rights acquired under quitclaim deed from Dr. Horace Grant to grantor herein." Contracts taken from the files of the McDonald Furniture Company, for the sale of furniture, one dated September 1, 1914, one March 25, 1918, and one September 15, 1920, each contained this language: "This indenture witnesseth that I have this day bargained with James McDonald, doing business as the McDonald Furniture Company, under the terms and conditions herein set out. . . Title to said property shall remain in James McDonald, doing business as McDonald Furniture Company, until the whole amount of said purchase money shall have been paid." A power of attorney from James McDonald to Dorothy Dabney, dated March 22, 1922, authorized her to sell and convey all property belonging to him in Fulton County, Georgia, to borrow money, execute loan deeds and mortgages, sign notes, warranty deeds, quitclaim deeds, receipts, and acceptances, to collect rents and to receive all moneys in connection with the management of such properties or for the sale or borrowing of money on the same. A quitclaim deed from Horace Grant to plaintiff, dated December 21, 1916, on consideration of $277, conveyed the house and lot known as 110 on West Mitchell Street. This deed recited that said property had been purchased by Grant from the City of Atlanta for taxes for the year 1916. A quitclaim deed from Grant to plaintiff,

on consideration of $278.75, conveyed the same property, purchased by Grant from the City of Atlanta for city taxes for 1917. A warranty deed from James McDonald to Elizabeth Dabney, dated September 21, 1915, on consideration of $10 and other considerations, conveyed a lot on the corner of Stephens and West Hunter Streets, lots on the corner of Dunkirk Street, lots Nos. 11 and 13 Electric Avenue, and lots known as 12-24 Electric Avenue, with the houses thereon, being a part of the property involved in this litigation. A warranty deed from McDonald to Elizabeth Dabney, dated January 29, 1916, conveyed the lot at the southeast corner of Carter and Maple streets. A trust deed to secure a loan of $5,000, dated March 24, 1922, between James McDonald and Dorothy Dabney, his attorney in fact, and the Adair Realty & Trust Company, conveyed 110-112 West Mitchell Street. A warranty deed from Elizabeth Dabney to Luetta T. Boddie, dated August 25, 1922, on consideration of $11,300, subject to two loans aggregating $3,500, conveyed 202-204 West Mitchell Street. A warranty deed from Luetta T. Boddie to Reliance Investment Company, to secure $4,300 principal, dated August 25, 1922, embraced the property 202-204 West Mitchell Street.

*Jones, Evins, Moore & Powers* and *W. A. Sutherland,* for plaintiffs in error in main bill of exceptions.

*Lowndes Calhoun,* contra.

HINES, J. (After stating the foregoing facts.)

1. We shall not elaborate any of the principles enunciated in the headnotes, except those embraced in headnotes 8, 9, and 10.

2. [8] Possession of land is generally notice of whatever right or title the occupant has. Civil Code (1910), § 4528. Possession is not only notice of the rights of the possessor, but of those under whom he claims. *Walker* v. *Neil,* 117 *Ga.* 733, 745 (45 S. E. 387); *Austin* v. *Southern Home B. & L. Asso.,* 122 *Ga.* 439 (50 S. E. 382). The possession of land which will be sufficient to give notice of the occupant's title, or of the title or rights of those under whom he holds, must have some element indicative that the occupancy is exclusive in its nature. *Manning* v. *Manning,* 135 *Ga.* 597 (69 S. E. 1126). Possession by husband and wife is presumptively his possession, but the pre-

sumption may be rebutted. Civil Code (1910), § 4528. So where husband and wife are in possession of land, and the record title is in the husband, who makes application for a loan upon the property, and by his application asserts title to and ownership of the property, the lender is protected against a secret equity of the wife. *Austin* v. *Southern Home B. & L. Association,* supra. So where a daughter lived in the house with her mother, upon lands the title to which was in the mother, and where the mother received the rents and profits of the land, a bona fide purchaser from the mother, while in possession of the land, took its title freed from any secret equity of the daughter. *Manning* v. *Manning,* supra. In that case the mother bought the land with money belonging to the daughter and took the legal title in her own name. So where the owner of land lived in a house upon it, together with a man and his wife and child, under an agreement with the wife that if she would board him and do his washing for the remainder of his life the property would belong to her for life, with remainder to her child. Presumptively the possession was that of the legal holder of the title; and where there was no other evidence to rebut such presumption, or to show notice of any right or equity in the woman and her child, this court held that the rule that possession of land is notice of whatever right or title the occupant has would not apply unqualifiedly; and that if a third party purchased the land from the owner bona fide for value and without notice, he would acquire a good title. *Hall* v. *Hilley,* 134 *Ga.* 77 (67 S. E. 428). To operate as notice, the possession must be open, visible, exclusive, and unambiguous, not liable to be misconstrued or misunderstood. It must not be a mixed or ambiguous possession. So it has been held that possession of land by the grantee, holding under an unrecorded deed, together with the grantor, is not constructive notice of the unrecorded deed to a subsequent purchaser. Wells *v.* American Mortgage Co., 109 Ala. 430 (20 So. 136). Where a widow contributed a part of the purchase-money of a farm, and her brother, who contributed the remainder, took title thereto in his own name without her knowledge, it was held that the fact that she lived on the farm with him did not give notice of her resulting trust to a purchaser from him. Harris *v.* McIntyre, 118 Ill. 275 (8 N. E.

182). The correct rule is that when the occupation by one is not exclusive, but in connection with another, with respect to whom there exists a relationship sufficient to account for the situation, and the circumstances do not suggest an inconsistent claim, then such a possession will not give notice of a right by an unrecorded grant. Rankin *v.* Coar, 46 N. J. Eq. 566 (22 Atl. 177, 11 L. R. A. 661).

So where a husband and wife were in possession of lands to which the wife held title by the record, it was held that the continuing possession was not notice of an unrecorded deed whereby her title had been conveyed to him. Atwood *v.* Bearss, 47 Mich. 72 (10 N. W. 112). The possession of a plural wife of a Mormon, along with the possession of the husband and his lawful wife, was held not to be notice of her right to a share of the property, to one who took a mortgage from the husband who held the record title. Townsend *v.* Little, 109 U. S. 504 (3 Sup. Ct. 357, 27 L. ed. 1012). Where the vendor is in apparent possession, the purchaser finding the title of record in the vendor is not put on further inquiry; and if at the same time another person is also in possession, there is no presumption of title in him inconsistent with that of the purchaser, unless there is some fact or circumstance, apparent to his observation, calculated to excite suspicion of a prudent man dealing with the property that the possessor other than the vendor had some equity therein. Campbell *v.* Grennan, 13 Cal. App. 481 (110 Pac. 156). When it appeared from the record that McDonald had the title, the proper inference was that the plaintiff's possession was under McDonald and in subordination to the true title. The possession which will be sufficient to put one proposing to purchase real estate from the person having the record title on inquiry, and which will be equivalent to actual notice of rights or equities in another, must be actual, open, and visible, not equivocal or ambiguous, or inconsistent with the title of the apparent owner by the record. Brown *v.* Volkenning, 64 N. Y. 82; Pope *v.* Allen, 90 N. Y., 298. The rule may be stated thus: If, of two occupants, one has the record title, a purchaser has the right to assume that the other has no title. Smith *v.* Yule, 31 Cal. 180 (89 Am. D. 167); Kirby *v.* Tallmadge, 160 U. S. 379 (16 Sup. Ct. 349, 40 L. ed. 463); Walden *v.* Williams, 128

Ark. 5 (193 S. W. 71) ; Thierman *v.* Bodley, 23 Ky. Law Rep.
756 (63 S. W. 737) ; Munn *v.* Achey, 110 Ala. 628 (18 So. 299) ;
39 Cyc. 760 (1). The possession which will put a purchaser
upon inquiry must actually exist at the time of the purchase,
and the purchaser is not affected by a possession which has
been abandoned before that time. O'Neal *v.* Prestwood, 153 Ala.
443 (45 So. 251) ; Aden *v.* Vallejo, 139 Cal. 165 (72 Pac. 905) ;
Hewes *v.* Wiswell, 8 Me. 94; Roussain *v.* Norton, 53 Minn. 560
(55 N. W. 747) ; Hiller *v.* Jones, 66 Miss. 636 (6 So. 465) ; Bing-
ham *v.* Kirkland, 34 N. J. Eq. 229; Bost *v.* Setzer, 87 N. C. 182;
Boggs *v.* Warner, 6 Watts & S. (Pa.) 474; King *v.* Porter, 69
W. Va. 80 (71 S. E. 202) ; 2 Tiffany on Real Property, 2225.

The plaintiff does not pretend that he had the exclusive pos-
session of this real estate. His contention is that his firm,
through an agent, rented the same to tenants, and that the pos-
session of these tenants of the firm was notice to Luetta T.
Boddie of his rights therein when she bought the property at
200-204 West Mitchell Street. He had managed this property
from 1915 to June 21, 1921, under a power of attorney from
McDonald. During·that period he secured a loan thereon stand-
ing in the name of McDonald, and under this power of attorney
he executed the notes and the deed to secure the same in Mc-
Donald's name, all of which appeared of record. On June 21,
1921, McDonald revoked this power, and executed a power of at-
torney to Dorothy Dabney, the daughter of plaintiff, empowering
her to manage and control his business and property. Under this
power of attorney Dorothy Dabney assumed the· duties imposed
upon her, and undertook to exercise the powers conferred upon
her by this instrument. She undertook to sell this real estate
at 202-204 West Mitchell Street. Plaintiff knew of this. He
made no objection. In these circumstances the alleged possession
of the plaintiff was not so clear and unambiguous as to be suf-
ficient to put the purchaser upon notice of his alleged secret
equity in these premises. His possession can well be referred to
his possession as agent for McDonald. Under all the facts and
circumstances, the legal title of Luetta T. Boddie ought to pre-
vail over this secret equity of the plaintiff.

3. [9] On March 23, 1922, plaintiff conveyed to McDonald
by quitclaim deed certain described real estate, the same being

a portion of the realty involved in this litigation, and known as 110-112 West Mitchell Street, Atlanta. The granting clause declares that the plaintiff, "in consideration of $1.00 and other considerations in hand paid, does forever quitclaim to the party of the second part,˙ his heirs and assigns, all his right, title, interest, claim or demand, which said party of the first part has or may have had in and to" the land embraced in this deed. Following the granting clause in this instrument is the ˙recital, "This deed made for purpose of releasing all rights acquired under quitclaim deed from Dr. Horace Grant to the grantor herein" to said described real estate. The taxes due the City of Atlanta were not paid, and the property known as 110-112 West Mitchell Street was sold under a tax fi. fa. against Mc-Donald for these taxes, when it was bought in by Dr. Grant, who, on Dec. 21, 1916, in consideration of $277, by quitclaim deed conveyed this property to the plaintiff. This property was again purchased by Dr. Grant from the City of Atlanta, which had acquired title thereto under a sale thereof for taxes due for the year 1917. By quitclaim deed Dr. Grant conveyed this property to the plaintiff for the consideration of $278.75. Upon obtaining the above quitclaim deed from the plaintiff, McDonald borrowed upon this property $5,000, securing the lender by his deed thereto. Of this loan $1,500 was paid to the plaintiff as the consideration of his quitclaim deed to McDonald. The purpose of this deed was to put title in McDonald so that he could borrow on this property. McDonald thereafter conveyed this property to Elizabeth Dabney, who is the wife of plaintiff and the sister of McDonald. Under the verdict and decree in this case plaintiff recovered an undivided half interest in this property from his wife. The question is, whether the plaintiff could recover this property in the face of the quitclaim deed which he made to McDonald.

It is now well settled in this State that a quitclaim deed to land does not estop the maker from afterwards setting up, as against his grantee, a title acquired subsequently to the making of said deed. *Bivins* v. *Vinzant*, 15 *Ga.* 521; *Morrison* v. *Whiteside*, 116 *Ga.* 459 (42 S. E. 729) ; *Taylor* v. *Wainman*, 116 *Ga.* 795 (43 S. E. 58). This is so for the reason that words in releases or quitclaims without warranty of title, ·which purport to

convey any future interest or title which the releasor or quit-claimer may acquire, are void at law, on the ground that one can not convey any greater title that he has. Such release or quitclaim passes nothing but what the releasor or quitclaimer has at the time. Right ex dem. Jeffreys *v.* Bucknell, 2 B. & A. 278. A release or quitclaim with warranty of title, which purports to convey what the grantor or the releasor or quitclaimer may in any manner hereafter have, operates as an estoppel on the ground that it prevents circuity of action. *Bivins* v. *Vinzant,* supra. But a quitclaim deed is just as effective to pass any title or interest which the maker has in lands as a deed with warranty of title. Washburn states the rule as follows: "If the grantor have a title to land, a deed of quitclaim is just as effective to pass that title as a deed with covenants of warranty." 3 Washburn on Real Property (6th ed.), 332, § 2239. Professor Washburn further says: "Though in one sense a deed of acquittance or release may be said to be an estoppel, as it is a valid and final bar to all existing claims, and all the possibilities arising from previous contracts of which it imports a relinquishment, it can not affect rights of which the foundation is laid afterwards." 3 Washburn on Real Property (6th ed.), 102, § 1917. In *Morrison* v. *Whiteside,* supra, this court expressly approved these principles. But it is insisted by his counsel that the plaintiff under his quitclaim deed did not intend and did not undertake to convey to McDonald all his right, title, interest, or claim in the premises at 110-112 West Mitchell Street, but only the particular interest or title which he acquired to said premises under his quitclaim deed from Dr. Horace Grant. In the granting clause of the conveyance from plaintiff to McDonald it is expressly provided that he "does forever quitclaim to party of the second part, his heirs and assigns, all his right, title, interest, claim or demand, which said party of the first part has or may have had in and to" these premises. Following the granting clause is this recital: "This deed made for the purpose of releasing all rights acquired under quitclaim deed from Dr. Horace Grant to grantor herein." It is urged that this recital discloses the purpose of the grantor to convey only the rights which he acquired to this property under Dr. Horace Grant, and that, construing this recital in connection with the granting clause, this instrument

must be held to convey only these rights in these premises and no other. According to the plain language of the granting clause, the plaintiff conveyed to McDonald "all his right, title, interest, claim or demand" in this property. This included every right, title, interest, claim, or demand which the plaintiff had in this land. Will the quantum of the estate, or of the right, title, claim, or demand thus conveyed in the granting clause be cut down so as to convey only specific rights in this property obtained under the plaintiff's conveyance from Dr. Grant? In the construction of a deed, the words used shall be taken most favorably against the person using them, and most to the advantage of the other party. The rule has been stated thus: "That all the words of the deed, in construction, be taken most strongly against him who doth speak them, and most in advantage of the other party." *Ball* v. *Wallace,* 32 *Ga.* 170. In the construction of a deed an intention expressed in different recitals will be controlled by the terms of the granting part of the deed. *Augusta Land Co.* v. *Augusta Ry. &c. Co.,* 140 *Ga.* 519, 523 (79 S. E. 138). So where a deed recited that it was the purpose of the grantor to give a life-estate to the grantee, with remainder in fee to his children, but in the granting part of the deed a conveyance was made to the grantee and his heirs in fee simple, it was held that the granting part of the deed controlled, and that the grantee took an estate in fee simple. *Dunbar* v. *Aldrich,* 79 Miss. 698, 31 So. 341. This recital in this quitclaim deed merely states the purpose which moved the grantor to make it. Such purpose and the estate conveyed are separate and distinct things. To effectuate this purpose the grantor conveyed all his right, title, interest, claim, or demand in the premises; and the extent of the right conveyed will not be cut down by a mere recital of the purpose for which the instrument was made.

Some light will be thrown upon the question of the proper construction of this quitclaim deed, by a consideration of the circumstances under which it was executed. The property embraced therein had been twice sold as the property of McDonald, for its city taxes, the first time in 1916 and the second time in 1917. It had been bought in by Dr. Grant, who afterwards quitclaimed it to the plaintiff. McDonald wanted to borrow $5,000 thereon. To do this he had to acquire from the plain-

tiff the title which he had acquired by the quitclaim deed from Dr. Grant. Thereupon plaintiff executed to McDonald the quitclaim deed involved in this discussion, and to induce him to quitclaim the property to McDonald the latter paid him from the proceeds of the loan which he obtained the sum of $1,500. It is hardly conceivable that it was the purpose of the plaintiff merely to convey the rights which he acquired in this property under his quitclaim deed from Dr. Grant, and not to convey his rights under the implied trust which he seeks to set up and enforce in this case. To impute to him the latter purpose would be to charge him and McDonald with fraud. So we are of the opinion that the plaintiff in this case is estopped by his quitclaim deed from asserting title to the premises at 110-112 West Mitchell Street. It follows that the finding in his favor of the one-half undivided interest in this property is contrary to law, and a new trial should have been granted on this ground.

4. [10] An implied trust arises when the legal title is in one person, but the beneficial interest, either from the payment of the purchase money or other circumstances, is either wholly or partially in another. Civil Code (1910), § 3739. Whenever the circumstances are such that the person taking the legal estate, either from fraud or otherwise, can not enjoy the beneficial interest without violating some established principle of equity, the court will declare him a trustee for the person beneficially entitled, if such person has not waived his right by subsequent ratification or long acquiescence. Civil Code (1910), § 3780. Where land is bought for a firm, paid for with money of the firm, and the title is conveyed to one of the members of the firm, an implied trust arises in favor of such firm. The members of the firm become equitable owners and tenants in common of such land. *Cottle* v. *Harrold,* 72 *Ga.* 830 (3); *Roach* v. *Roach,* 143 *Ga.* 486, 488 (85 S. E. 703). The trust which arises in these circumstances in favor of the partnership is not destroyed by the express verbal, and therefore unenforceable, agreement of the partner in whose name the title is taken, that he will hold the land for the use of the firm. While such parol agreement can not be enforced as an express trust, the implied trust arising under these circumstances will be enforced by a court of equity. *Jackson* v. *Jackson,* 150 *Ga.* 544, 549 (104 S. E. 236). Not-

withstanding such agreement, the resulting trust may be proved by matter not in writing. *Poulet* v. *Johnson*, 25 *Ga.* 403, 411; *Jackson* v. *Jackson*, supra. It is urged, however, by counsel for the defendants, that, where various tracts of land are purchased under these circumstances, it is incumbent upon the partner who is seeking to set up and enforce such trust to show the specific amount of his funds which went into the purchase of each tract, where both partners contributed funds toward their purchase. Ordinarily, where one person seeks to enforce an implied trust in land because it was paid for in part by his money and title thereto was taken in the name of another, he must prove the amount of his money so used; but where real estate is purchased with funds of a partnership, contributed by both members, and title is taken in the name of one of the members under an agreement that he is to hold the same for the use of the firm, this rule does not apply. Equity will treat the lands as partnership assets; and the partner seeking to enforce the implied trust arising under these circumstances will not be required to show the specific amount of the funds contributed by him to the partnership capital which went into the purchase thereof. The rights of the respective partners in such realty will depend upon the final accounting between them, upon the dissolution of the firm for any cause.

Under the principles announced, the judgment in the main bill of exceptions must be *reversed*, and that in the cross-bill of exceptions *affirmed*.

*All the Justices concur, except Russell, C. J., dissenting.*